Stevens *v.* Dudley.

## C. F. STEVENS *v.* D. W. DUDLEY.

### *Negligence. Evidence in Rebuttal. New Rules.*

1. The plaintiff, while attending the annual fair of the Washington County Agricultural Society, received the injuries complained of by collision with a runaway team, which, just prior to the accident, was driven by one S. The defendant was one of the marshals of the society; and while clearing the track preparatory to a trial of speed of horses, which was about to begin, he turned S., with his team, off the track. In the act of turning, S. was thrown out of his carriage, the horses broke loose, ran against the plaintiff's carriage, and so caused the injuries. The question being whether the defendant exercised the requisite prudence, or was negligent, the court below charged : "Was the defendant guilty of a wrong in the manner of requiring this S—— to leave the track ? If so, did he do an act which a person thus acting must have adjudged would, in the natural course of events, be the natural consequence of that act, to set those horses loose, adrift, into that crowd, and cause them to run away ? If not, then there is no recovery." *Held,* error; that the question was not what the defendant, or a person thus acting, *might reasonably expect, or adjudge, would result from the act;* but that, if the defendant *negligently turned the team up the bank, off the track, and S. thereby lost control of his team,* which broke loose and so caused the damage, without any superior, uncontrolable force, or without the negligence of a responsible agent having intervened, the defendant would be liable; and that this is so, although the negligent act was committed in the performance of a legal duty.

2. Testimony was admissible to prove all the considerations and circumstances which might legitimately influence the defendant's acts in the removal of S., and what occurred prior to the accident, between S. and the defendant, and S. and the policemen, as that he had been ordered off the track once before.

3. EVIDENCE IN REBUTTAL. NEW RULES. The plaintiff's opening testimony tended to show that the defendant forced the team up the bank; the defendant's testimony tended to show that S. voluntarily turned the team up the bank. *Held,* that the defendant did not raise any new issue; and that under the new rules, there was no error in refusing to admit S. to testify in rebuttal that he did not turn the team up the bank, although the court in its discretion might have admitted the evidence.

TRESPASS and case for injuries received by collision with a runaway team. Plea, general issue with notice. Trial by jury, March Term, 1883, Washington County, REDFIELD, J., presiding.

Judgment for the defendant. The injury complained of was occasioned by a collision with a runaway team while the plaintiff was attending the annual fair of the Washington County Agricultural Society. The defendant was one of the marshals of the society. Many men, women, and teams were on the fair grounds. A trial of speed of horses was about to begin. No question was made but that the defendant had a right to keep the track clear. The defendant claimed that one William Stevens was driving a pair of horses with a carriage on the track in violation of the rules of the society, and that he, defendant, in a prudent and lawful manner, caused Stevens and his team to be turned off the track. This team in the act of turning broke loose, and caused the injury.

The plaintiff offered the testimony of Albert Howison, who testified to Dudley's acts in turning the horses off the track. The defendant's counsel, on cross-examination, proposed to inquire of the witness as to the conduct of William Stevens, who was in no way connected with the plaintiff, as to the conduct of William Stevens, and as to the trouble the defendant had had with him on the same occasion, but before the time he rode in before Stevens' team and turned it off the track, and also as to teams being on the track at the time.

The plaintiff objected, claiming that the only question for the jury was, whether the defendant, in turning the team off the track in the manner he did, acted with reasonable care, caution and prudence, or was reckless and negligent.

The court overruled the objection and admitted the testimony of the witness, and other witnesses, tending to show that William Stevens was ordered off the track, by several persons who had charge of the same, and that defendant ordered him off the track a short time before he turned him up the bank, and that he drove off, but as soon as defendant passed he drove back on to the track, when Dudley turned and rode rapidly in ahead of him, and turned him up the bank.

The other facts are sufficiently stated in the charge to the jury and in the opinion. The court charged:

"The wrong complained of against this defendant is that he improperly, wrongfully, either in the manner or kind of the act, interfered with William Stevens' horses and team, and either drove them or caused them to turn off the track, and in turning off, the horses got liberated, and ran at large into the crowd of people, and this plaintiff was injured.

The defendant was a deputy or assistant marshal in keeping order and enforcing the rules of this association. We .do not think it important whether the association or the corporation had passed any special vote. It is incident to all popular assemblies for lawful purposes that they may establish rules to preserve order and peace. An association, gathered together for agricultural and mechanical purposes, has a right to choose a moderator and to appoint other officers to keep order; and if any one intrudes upon the rules, or disturbs them, such officers have the right to cause such intrusion or disturbance to stop, to be abated, in a reasonable and proper manner." * * * * So this case must .stand that William Stevens was in the wrong, and that Dudley was discharging his duty rightfully. Now, it is said, that although that is conceded, this defendant, Dudley, did a wrong.in the manner of requiring or causing this William Stevens to leave the track and go up on the grass-ground. If it were a case where Stevens or one of those women in the wagon had been injured, that would be a common phase of litigation, such as we frequently have here in court. Stevens was in the wrong, —wrongfully there; but Dudley had a. duty, not only to cause Stevens to leave, but to cause him to leave in a manner which was reasonably prudent. He must not cause him to go off or enforce his authority upon him in'a manner which would necessarily endanger life and limb." * * * "We are asked to charge,. on the part of the plaintiff, that you are to consider nothing but the mere fact of the turning off or the causing of William Stevens to be turned off from the track, and no incidents which followed or preceded. And we think that that is the main inquiry. But we have allowed, and we think properly, that in order to show the relation of the parties they may show the fact that the policemen had interfered with William Stevens previously, and that Dudley himself, just before that, had required him to leave the track at a proper place, up by floral hall, and that he did leave, but immediately turned on to the track after Dudley had passed him and drove along the track in violation of the order and rule. We think that that is admissible ; first, to show that William Stevens knew he was violating the rule, and that he was intentionally and

wilfully violating the rule, and that Dudley knew that he had, and went down there knowing that if Stevens could escape from the immediate order of the police he would violate the rule—had done it just before." * * * "You will determine from all this evidence what was the manner and method of that team's turning off on to the grass-ground. If Dudley only required him to leave and not to go any longer down that track, and if it was left entirely to the discretion of Stevens as to the method of leaving, then if in casting his eye on to this bank he considered that it was not safe to go up, loaded as he was, and that he ought to ask his women to step out before attempting it, he should have done so, although he was required to leave. Yet if the manner of leaving was all within the power and control of Stevens, he should have exercised his discretion and gone off in a safe and prudent manner, had every one got out of the team before attempting it, if necessary, which could be done, if he had control of his team, in a moment. But if Dudley forced the team up the bank by whipping it, and forced it into a speed which necessarily threw them out when they went off, why, then it would be the act of Dudley, and for which he might be responsible." * * *
" Was it such an act that a reasonably prudent man would anticipate, that the natural and probable result of requiring that team to go out of the track at that place would be to set runaway horses loose into a crowd of people, that that would be the natural and reasonable course of events? Or was it rather an accident which might occur once in a thousand times, and not reasonably to be expected as a consequence of that act requiring William Stevens' team to leave.

Now, Mr. Dudley does not stand as an insurer. But he is to be held, though in the right of requiring William Stevens to leave, to exercise his duty in a reasonably safe manner, and he is liable for the natural consequence of his acts, that is, what reasonably might be expected to occur; what he must suppose would be the result of his turning this team out." * * * " Was the defendant guilty of a wrong in the manner of requiring this William Stevens to leave the track? If so, did he do an act which a person thus acting must have adjudged, would, in the natural course of events, be the natural consequence of that act, to set those horses loose, adrift, into the crowd, and cause them to run away? If not, then there is no recovery."

*W. P. Dillingham* and *J. A. Wing*, for the plaintiff.

The court erred in admitting testimony to show the transactions

between William Stevens and the policemen and this defendant prior to turning Stevens off the track. *Conkling* v. *Thompson*, 29 Barb. 220. The only question was whether the defendant acted with reasonable care and prudence in turning William Stevens' team up the bank at the time and place when it was done, taking into consideration the character of the horses and the number of persons in the wagon, the height of the bank, and the nearness of the wagon to the bank; and that single question was the only one for the jury to try.

The court erred in excluding the testimony of William Stevens, offered in rebuttal; he was not used in the opening.

The rule does not require the plaintiff to anticipate all questions that may arise on the defence not put in issue by the pleadings; and we insist that it does not come within the rule or the discretion of the court.

There was error in the charge as to the defendant's liability for his negligence. It is not what the defendant *anticipated* would be the result of his action.

The law is well settled in this State that if a man does a voluntary act that he is not by law required to do, he is answerable for all the consequences of his acts whether a reasonable and prudent man would anticipate it or not. If he voluntarily sets the machinery in motion he is liable for the consequences whether a prudent man would anticipate the effect or not. *Underwood* v. *Hewson*, 1 Str. 569; *Wright* v. *Clark*, 50 Vt. 130; *Vincent* v. *Stinehour*, 7 Vt. 62; *Bradley* v. *Andrews*, 51 Vt. 530; *Morrill* v. *R. R. Co.*, 54 Vt. 200; *Binford* v. *Johnson*, 22 Law Reg. 50 (Sup. Ct. Ind., toy pistol case); *Lake* v. *Mulligan*, 62 Me. 240; Whar. Neg. ss. 12, 18, 21; *Muldowney* v. *R. R. Co.*, 36 Iowa 462; *Higgins* v. *Dewey*, 107 Mass. 494; *Perley* v. *R. R. Co.*, 98 Mass. 414; 4 Otto. 469; *Hoyt* v. *Jeffers*, 30 Mich. 200; *R. R. Co.* v. *Stout*, 17 Wall. 657; *Stebbins* v. *Vt. Cen. R. R. Co.*, 34 Vt. 464; *Krippen* v. *Bixby*, 12 Reporter 338 (Sup. Ct. Minn.); *Wilch* v. *Durand*, 36 Conn. 182; *Carter* v. *Towne*, 98 Mass. 567; *Cole* v. *Fisher*, 11 Mass. 136; *Lyman*

v. *Union R. C.*, 114 Mass. 83 ; *Hawley* v. *Steele*, 23 Eng. Rep. 120 ; 7 Wall. 44 ; *Dickerson* v. *Boyd*, 17 Pick. 78.

*Heath & Carleton*, *S. C. Shurtleff*, and *Geo. W. Wing*, for the defendant.

The testimony objected to was clearly admissible to show to the jury the general situation and surroundings in order that they might determine whether the defendant, in causing the horses to be turned from the track in the way he did, and at the place he did, acted with due care and prudence.

William Stevens' testimony was not admissible under Rule 23 of Washington County Court, which is as follows : "The plaintiff, after having rested at the opening of the cause, will not be permitted to give general evidence in support of the case made in the opening, but will be confined to evidence legitimate to rebut the evidence given on the part of the defence." *See Pratt* v. *Rawson*, 40 Vt. 183.

The charge of the court as to the defendant's liability under the circumstances of the case was not erroneous. We understand the rule to be that liability extends to consequential injuries, by whomsoever sustained, so long as they are of a character likely to follow, and which might reasonably have been anticipated as the natural and probable result under ordinary circumstances of the wrongful act. The damage is not too remote, if, according to the usual experience of mankind, the result was to be expected. Or, as stated by Mr. Justice Strong, in *Harris* v. *R. R. Co.*, 13 Fed. Rep. 591, one is not liable for an act not amounting to wanton wrong, unless the injury ought to have been foreseen in the light of the attending circumstances. *Lane* v. *Atlantic Works*, 111 Mass. 136 ; Whar. Neg., ss. 78, 108, 138 ; *McDonald* v. *Snelling*, 14 Allen 290 ; *Gerhard* v. *Bates*, 2 El. & Bl. 490 ; *Crandall* v. *Goodrich Trans. Co.*, 16 Fed. Rep. 75 ; *Scott* v. *Hunter*, 46 Penn. St. 192 ; *McGraw* v. *Stone*, 53 Penn. St. 436 ; *Fairbanks* v. *Kerr*, 70 Penn. St. 86 ; *Brown* v. *Collins*, 53 N. H. 442 ; *Greenland* v. *Chaplin*, 5 Exch. 243.

The opinion of the court was delivered by

Ross, J.  I.  The plaintiff contends that the admission of testimony of what had occurred between the defendant and Wm. Stevens, and between the police and Wm. Stevens just prior to the defendant's riding in front of his team, and turning it from the track, was prejudicial error.

The defendant was there with the duty, among other things, of clearing and keeping the track clear of teams, preparatory to the trial of speed that was about to take place.  What measures he might reasonably and prudently be required to take to effect that purpose with reference to Mr. Stevens and his team, depended largely upon what he knew had already been done to that end without avail.  The duty of the defendant had relation to the safety of those who might rightfully use the track, as well as to the safety of all who were present as spectators.  A danger to those rightfully using the track, if not at that moment imminent, would be likely to arise, if the track was not immediately cleared of all other teams, and kept clear of them.  The defendant had the right to consider, and his action in reference to the removal of Wm. Stevens' team might properly be modified by the influence of his refusal to keep off the track, upon other spectators who might desire to cross or pass along the track. The jury, in judging of the defendant's conduct on that occasion had the right to be put in possession of all the considerations, and circumstances, which might legitimately influence his acts and conduct in the removal of Wm. Stevens' team from the track, and so be able properly to determine whether his acts and conduct on that occasion were prudent or imprudent.  We think there was no error in the admission of this class of testimony, nor in the use the court made of it in the charge.

II.  Whether the court correctly refused to admit Wm. Stevens to testify in rebuttal, that he did not turn the team up the bank, depends upon whether this was rebutting testimony within the new rules of the court upon this subject.  The rules require the plaintiff to put in all his testimony bearing upon the issues which he makes in the case in the opening, and only allow him in the close to introduce testimony to meet and disprove issues

which the defendant's testimony has first raised in the case. The plaintiff's opening testimony tended to show that the defendant forced Wm. Stevens' team up the bank. The defendant's testimony met the issue raised by the plaintiff's testimony by tending to show that Wm. Stevens voluntarily turned the team up the bank. The defendant thereby raised no new issue, but only met the one raised by the plaintiff's testimony. In closing, the plaintiff offered Wm. Stevens as a witness to show that he did not voluntarily turn the team up the bank. While this would tend to disprove the testimony introduced by the defendant, and for that reason might properly be said to rebut it, it only did so by strengthening the plaintiff's evidence on the very issue which he had made by his opening testimony. It would not tend to disprove or rebut any new issue which the defendant had raised by his testimony. It was an offer of evidence to support and strengthen the plaintiff's side of an issue first raised by him in his opening testimony, rather than strictly to rebut the defendant's testimony. The County Court in its discretion might have admitted it. *State* v. *Magoon*, 50 Vt. 333. But, in adhering to the new rules, in their true sense and spirit, the court correctly excluded the offered testimony.

III. It is contended that the court erred in charging the jury, in substance, that even if the act of the defendant in turning the team up the bank were imprudent and negligent in regard to William Stevens and those persons with him in the wagon, such negligence, although it injured the plaintiff, would not be actionable in his favor unless the defendant might have reasonably expected such an injury to have resulted from his negligent act. This limitation upon the defendant's liability for his negligence in regard to an injury to the plaintiff therefrom pervades the entire charge upon this subject. It is variously expressed in different portions of the charge, but always to the same general effect. In closing the charge on this subject the learned judge used this language: "Was this defendant guilty of a wrong in the manner of requiring this William Stevens to leave the track? If so, did he do an act which a person thus acting must have

adjudged, would, in the natural course of events, be the natural consequence of that act, to set those horses loose, adrift into that crowd, and cause them to run away? If not, then there is no recovery." This certainly is not the general rule applicable to the responsibility of a party for injuries caused by his negligent act. The general rule is that the person who is guilty of a negligent act is responsible for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force. Whether the injurious consequences may have been "reasonably expected" to have followed from the commission of the act, is not at all determinative of the liability of the person who committed the act, to respond to the person suffering therefrom. Such reasonable expectation bears more clearly upon the intent with which the act was committed than upon the liability of the doer for the injurious consequences. If he might have reasonably expected that the injurious consequences, which did flow from the act, would flow from its commission, the *prima facie* legal presumption would be that he intended the consequences, and the action should be trespass rather than case. It is the unexpected rather than the expected that happens in the great majority of the cases of negligence. In his recent work on negligence, Mr. Wharton says: "*Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as produces, in an ordinary and natural sequence, a damage to another;*" s. 3. He arrives at this definition after a careful consideration of the various definitions given by other text writers on the subject. "Reasonable expectation" is hardly predicable of "an inadvertent imperfection in the discharge of a legal duty." The same learned author, in ss. 16 to 21, and 73 to 78, inclusive, shows that the test of reasonable expectation of the injurious consequences, for which recovery is sought, as determinative of the liability of the person who has committed the negligent act, has been abandoned by a great majority of the courts of last resort both in England and in this country, and especially in the more recent

decisions. He also shows clearly the fallacy of such a test, and in summing up, in s. 78, says : "Nor, when we scrutinize the cases in which the test of 'reasonable expectation' is applied, do we find that the 'expectation' spoken of is anything more than an expectation that some such disaster as that under investigation will occur *on the long run* from a series of such negligences as those with which the defendant is charged." The cases cited by him in the notes, and especially note 2, to s. 77, fully sustain the position taken by the learned author. What injuries proceed in ordinary natural sequence from the neglect, is to be determined rather from the circumstances of the case, from whether a *vis major*—act of God, or another negligent act of a responsible agent, has intervened between the injury and the negligence, than from whether the author of the negligence might or must have reasonably expected such a result from his negligence. In tracing the ordinary natural sequence of a negligence when applied to a living force, like horses, regard is to be had to the fact that they will probably act in conformity to their natural and probable habits and instincts. Nothing is more natural than that a spirited pair of horses, when suddenly deprived of the control of their driver, being in rapid motion, should become frightened, and dash blindly against whatever might happen to stand across their pathway. If the defendant negligently turned the team up the bank, in such a manner that the driver was thrown out, it was not a remote, or unnatural, or improbable sequence that the horses should become frightened, and dash blindly upon any of the teams of the spectators with which the grounds were filled. That the defendant did not, or might not, have reasonably expected that his negligence would cause the driver to be thrown out, that in attempting to regain control of the team the bits of the off horse would break, and that then the frightened horses would dash furiously and blindly upon the plaintiff, rather than any other spectator then present upon the grounds, was no proper test or measure of the defendant's liability for the injury thereby sustained by the plaintiff. Instead of charging the jury, that the

defendant, although negligent in turning the team up the bank, would not be responsible for the injury to the plaintiff, unless he, or the jury, or a reasonable person, might reasonably have expected or anticipated such a result to have followed from his negligent act, the County Court should have charged the jury that, if the defendant negligently turned the team up the bank, and thereby the team was deprived of the control of a driver, and became frightened and ran over the plaintiff's team, and caused the damage without any superior, uncontrolable force, or without the negligence of a responsible agent having intervened, the defendant would be liable for the injurious consequences of his negligence to the plaintiff, although the defendant did not, and might not have expected or anticipated such consequences from his negligent act. In other words, the court should have told the jury that if the plaintiff established that the act of the defendant in turning the team up the bank was negligent, and that by his evidence, the plaintiff, in natural order of cause and effect, showed that he was injured thereby, he was entitled to recover. The fact that the defendant's negligent act was committed in the performance of a legal and proper duty as an officer of the fair ground association, did not add to, nor take from, his liability. That fact, and the necessity of some action by him, to clear and keep clear the track, to the end that the proceedings of the association might be conducted in a manner conducive to good order, and the reasonable safety of all persons present, as well those who had the right to use the track, as those who were present as spectators, were proper for the jury to consider in determining whether the defendant's act was negligent in regard to the spectators. The remoteness of the probability of any danger arising to any of the spectators, from turning the team up the bank, considering the height of the bank, the rate of speed at which the horses were running, the character of the load in the wagon, the way the driver was encumbered, and all the circumstances attending the act, was proper for the jury to consider in determining whether the act of the defendant was negligent, whether it was such an inadvertent imperfection in the discharge

Stevens *v.* Dudley.

of the legal duty which the defendant was under, as ordinarily, tracing cause to effect, would result in an injury to a spectator. But with the negligence of the defendant established, we think the County Court erred in the rule given to the jury to determine the liability of the defendant for the injurious consequences to the plaintiff.

There are expressions scattered through the charge such as, "Now it is of no consequence whether this man could have passed down out of the gate and not be interfered with," "If his bits were so worn out that it was imprudent to drive spirited horses with them on, then he was negligent," "These runaway horses got loose and rushed into the crowd by accident," which if standing alone would be open to criticism. For, it was the manifest duty of the defendant to have let Wm. Stevens pass down the track six or seven rods and out of the gate, if it could have been safely done, rather than to turn a pair of runaway horses into a helpless crowd of spectators; and Wm. Stevens would not be responsible for the worn out condition of the bits, if he exercised reasonable care and prudence in hiring the team, and did not know of their condition; and the breaking away of the horses might or might not be what is commonly denominated an accident. But where the whole charge is sent up for examination, it would be strange if expressions, selected here and there, would not be open to criticism, while the general tenor of the charge and the inevitable impression left upon the jury be correct. We do not think these and other expressions complained of by the defendant, when the whole charge is considered, were errors misleading the jury to the prejudice of the plaintiff.

Neither is the plaintiff entitled to any special consideration from the failure of the court to comply with his requests to charge. It would be difficult to select from the thirteen requests, one that contains a clear cut, pointed expression of a sound proposition of law, applicable to the facts of the case. Many of them are attempts to have the court give special prominence to certain facts which the defendant deemed important to his side of the case; in other words, to get the court to make a closing argument

in his favor, rather than a fair and impartial statement of the law governing the issues of fact raised by the evidence in the case. Such requests are always mischievous in spirit and tendency; have no proper place in a jury trial, and are to be condemned unqualifiedly.

Judgment reversed and cause remanded.