### LENA M. NIEBERG *v.* VICTOR COHEN ET AL.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed November 10, 1914.

*Husband and Wife—Alienation of Affections—Wife's Right to Sue—Immorality—Single Act—"Enticement"—"Alienation"—Injury to Husband—Incarceration For Offence—Loss of Support—Wife's Right to Sue—Torts—Right of Action—Injury to Third Persons.*

At common law a wife had no remedy for the alienation of her husband's affections.

The ordinary action of a wife for the alienation of her husband's affection by criminal conversation is only against the husband's paramour.

A single act of sexual intercourse on a chance occasion with a prostitute by a man accustomed to marital infidelities does not constitute the "enticement" and "alienation" essential to a recovery by the wife in a suit for alienation of affections.

Where one is injured by the wrongful act of another, and thereby a third person suffers an indirect loss because of some contract obligation to the injured party, that loss is not actionable, unless it was maliciously and fraudulently intended.

Outside of a statutory right of action given a wife against a third person for an injury to her husband resulting in the deprivation of his support, the test of her right to such action is not such deprivation, but the cause of it; if such deprivation is owing to causes for which the husband may recover, his recovery is deemed to be partly for the wife's benefit, and the remedy is to him alone.

Where defendant, believing that plaintiff's husband was guilty of criminal conversation with defendant's wife, successfully accomplished a scheme with codefendant whereby plaintiff's husband was taken *flagrante delicto* with another woman and imprisoned for adultery with her, defendants' wrongful act being against the husband alone, plaintiff could not recover damages from defendants because of the loss of her husband's affections, society, and support, resulting from that scheme and imprisonment, there being no evidence of any intent to injure plaintiff.

CASE FOR CONSPIRACY. Plea, the general issue. Trial by jury at the September Term, 1913, Chittenden County, *Stanton,* J., presiding. At the close of all the evidence the defendants moved for a directed verdict, on the ground stated in the opinion. Motion denied, to which the defendants excepted. Verdict and judgment for the plaintiff. The defendants excepted.

The statement referred to in the opinion is as follows:

The Niebergs and Cohen were located at St. Albans, where the latter kept a store with his wife in attendance; Agel was an acquaintance of Cohen residing in Boston, who made occasional trips to Burlington and St. Albans; and Hattie Cushing was apparently a resident of Burlington or Winooski. There was evidence that Nieberg had a bad reputation for chastity, and that Mrs. Nieberg had once made a specific complaint to the State's attorney touching his conduct in that respect; that Cohen was suspicious of Nieberg's relations with his wife, and had forbidden his coming to the store, and on subsequently finding him there had beaten him severely.

An officer in St. Albans testified that shortly before the affair in question he went to Cohen's store at his request, and found Cohen and Agel there; that Cohen told him Nieberg was then in a certain house and that he wanted to catch him and asked the witness to go and arrest him; that witness told him he could not do this without papers, but that if he would get a warrant he would make the arrest; that Cohen offered him twenty-five dollars to do the job, and that witness suggested getting some one whom Nieberg would not mistrust; and that Agel then said that he could do the business—that he was going to Burlington, and that Nieberg was often there on business and he could catch him there.

A Burlington attorney testified that Cohen and Agel came to his office together on a Saturday, and talked together about getting Nieberg to come to Burlington, having some laughter between them in connection with it; and that after this Agel had a telephone talk with Nieberg at St. Albans, in which it was agreed that they should meet at Essex Junction at noon the following day about some matter of business. Agel and Nieberg met at Essex Junction as agreed, and came to Burlington together later in the day. Agel testified that the meeting at the Junction was agreed upon for the purpose of going to Montpelier to trans-

act some business, but that he learned Sunday morning that the appointment there was cancelled. Nieberg testified that Agel so informed him, and said, "Come to Burlington."

Defendant Cohen testified in substance that he saw Nieberg take the noon train from St. Albans going south; that he himself took the evening train and arrived in Burlington about eight o'clock, and went to the junction of Bright Street with Winooski Avenue, and remained in that vicinity until about 10:30; that he knew from Agel that Nieberg would be in Burlington that day, and that he expected to see him going to Winooski, and was there watching for him; that when the hackman came along he fell in behind the sleigh, and ran after it, about 25 or 30 rods behind, until it got to the Allen House; that there were only three people in the sleigh; that he saw Nieberg go in with the woman, told the hackman to wait, went to where he could look through the window, saw Nieberg register, then went to the police and communicated with the State's attorney, and after some going about, in which he made use of the hackman, obtained a warrant, which was served between two and three o'clock; that he followed Nieberg to watch him and catch him and have him convicted of adultery; that he did not hire the hackman for that occasion, but paid him two dollars for what he did for him. There was also evidence that Cohen had said that he wanted his revenge and he had got it, and that he paid the hackman thirty dollars for the job. The hackman was out of the State at the time of the trial, and had been for some months.

Agel and Nieberg took an electric car from Essex Junction, and stopped at Braxton's, a disreputable resort near Fort Ethan Allen, and stayed there five or six hours. Agel testified that he had no previous knowledge of the place; that Nieberg wanted to go in and get a drink, and that both drank; that the women there called Nieberg by name, and that he called them by name, and that he told witness about his previous experiences with them; that Nieberg took nothing but a glass of beer, and paid for it himself. Nieberg testified that Agel wanted to stop at Braxton's and get a drink; that he (Nieberg) did not know the women there; that he drank beer, whiskey and brandy, and that Agel paid the bills; that he wanted to take a car back to Essex Junction to get the seven o'clock train, the earliest train by which he could return, but that Agel urged him to go to Burlington. They reached Burlington about seven or eight o'clock,

and went to the house of Rabbi Sacks, who was Agel's father-in-law, for some supper. Agel testified that they did not get any because the Rabbi's family were away. Nieberg testified that Mrs. Sacks and the children were there, that both he and Agel had supper, and that he drank two glasses of brandy. Rabbi Sacks testified that he and his wife were about leaving the house when Nieberg came; that he called Nieberg to supper, and that he went to the table; that it was a feast day, and there might have been brandy on the table. Agel and Nieberg went next to Klinkerstein's, where they stayed awhile, but without drinking. For some purpose, as to which they are entirely disagreed, they went from Klinkerstein's to Dorn's saloon on Main Street, and remained in that vicinity until about ten o'clock, but had no drink.

Agel testified that while they were in front of Dorn's Nieberg motioned to the hackman, who was on the other side of the street, to drive over, and that they both got into the sleigh, Nieberg asking him to do so; that they went up Winooski Avenue until they came to a woman who was walking along the sidewalk alone going north, when Nieberg stopped the team and spoke to the woman, and she got in; that he remained in the sleigh until it got as far as Klinkerstein's, when he jumped out and went to his father-in-law's; that he did not know the woman, but that Nieberg called her by name and she called him by name.

Nieberg testified that while he and Agel were talking the hackman came along and Agel said to witness, "come along," and they drove up Winooski Avenue; that the hackman saw the woman and turned the team around and took her in, and that when they got as far as Klinkerstein's Agel jumped out and told the hackman to drive along on Winooski Avenue to the Allen House, and said, "I will be there soon"; that he went there and waited for Agel; that in the warm room the liquor went to his head, and he got very sick and didn't know much; that he did not engage the hack, nor motion it to come across the street; that he did not know the woman, and did not ask the hackman to stop nor ask her to get in. Nieberg registered as "J. M. Thompson and wife, Montpelier, Vt." Agel testified that Nieberg was not drunk when he left him. The officer who arrested him testified that he had been drinking, but was not drunk. There was no evidence of the administering of drugs.

*Theodore E. Hopkins* and *Sherman R. Moulton* for the defendants.

But even conceding that there was evidence of a combination for the purpose of watching Nieberg, this does not render it unlawful. An action will not lie for a conspiracy to do a lawful act. *Boutwell* v. *Marr*, 71 Vt. 1, 42 Atl. 607, 43 L. R. A. 803, 76 Am. St. Rep. 746; *Adler* v. *Fenton*, 24 How. 407, 16 L. ed. 696; *McHenry* v. *Sneer*, 56 Iowa 649, 10 N. W. 234; *Nations* v. *Pulse*, 175 Mo. 86, 74 S. W. 1012; *Porter* v. *Mack*, 50 W. Va. 581, 40 S. E. 459; *W. Va. etc. Co.* v. *Standard Oil Co.*, 50 W. Va. 611, 56 L. R. A. 804, 40 S. E. 591, 88 Am. St. Rep. 895; *Lanyon* v. *Edwards*, 79 Fed. 580, 25 C. C. A. 100.

*E. A. Ashland* and *H. S. Peck* for the plaintiff.

MUNSON, J.  Louis M. Nieberg was found guilty of committing adultery with Hattie Cushing, and was sentenced to the State prison and served a part of his term. His wife brings this suit against Victor Cohen, Max Agel, and Hattie Cushing to recover damages for the loss she sustained in being thus deprived of his affection, society and support; charging that the defendants conspired together to procure, and did procure, the commission of the offence by means of persuasions and the administering of intoxicating liquor and drugs. Hattie Cushing has not been personally served, nor been within the State since the writ issued, and the trial proceeded against Cohen and Agel alone.

The only exception argued is that taken to the refusal of the court to direct a verdict for the defendants. It was claimed below, and is now argued, that there was no evidence tending to establish the alleged conspiracy, and none tending to show that the defendants did anything to influence Nieberg to commit the crime; that in doing all that the evidence tended to establish, the defendants did nothing but what they had a legal right to do, and that the motive with which one does a legal act is not material.

A somewhat particular presentation of the evidence will be found in the statement of the case.

There was certainly evidence tending to show that Cohen and Agel were acting in concurrence in the execution of a plan previously agreed upon. The claim made by the defendants raises

the question whether the undertaking which the evidence tends to establish was merely to keep Nieberg under observation to get evidence of a crime likely to be committed and secure his punishment, or whether it covered a purpose and attempt to bring about the commission of a crime through agencies of their own. The use of the word "persuasions" in the declaration did not confine the plaintiff to influences by word of mouth. The influence·may have been exerted through surrounding conditions for which the defendants were responsible. We think the evidence tends to show that Cohen and Agel conspired to bring about the commission of an offence at a time opportune for discovery and proof, by creating conditions calculated to secure the desired result; and that they were actuated therein solely by a desire to injure Nieberg. But it cannot be said that the evidence fairly and reasonably tends to show that Nieberg was so intoxicated as not to be master of himself. We know of no other case like this, and before carrying our conclusions further we give some preliminary consideration to the relation between husband and wife as bearing upon the latter's rights of action.

The wife had no remedy at common law for the alienation of her husband's affection and the consequent loss of his society and aid. This was partly because of her inability to sue independently of her husband, and partly because she was not considered to have any property interest in her husband's services. *Knapp* v. *Wing*, 72 Vt. 334, 47 Atl. 1075. But in nearly all jurisdictions where the wife is now empowered to sue alone and to hold separate property, she is held entitled to recover damages of the person causing the alienation, and this without the aid of any special statute. Note, 46 Am. St. Rep. 472.

In other instances of a wrongful deprivation of the husband's support the right of recovery is given by statute. The right to recover for the pecuniary injury resulting to a widow from the loss of her husband's support through his death from a wrongful act did not exist at common law and depends wholly upon the statute. *Legg* v. *Britton*, 64 Vt. 652, 659, 24 Atl. 1016. A wife who has lost the support of her husband through the disabling effects of intoxicating liquor unlawfully furnished recovers solely by force of the statute. Enactments of this nature, known as the Civil Damage Acts, give a cause of action where none existed at common law. *Campbell* v. *Harmon*, 96

Me. 87, 51 Atl. 801; *Volans* v. *Owen,* 74 N. Y. 526, 30 Am. Rep. 337. The recognition of the right of the wife to recover for the loss of support resulting from an alienation of her husband's affection, as a right in existence when her common law disabilities are removed, is doubtless due to the nature of the marriage relation and the mutuality of its peculiar obligations. See *Bennett* v. *Bennett,* 116 N. Y. 584, 590, 23 N. E. 17, 6 L. R. A. 553.

It may aid us somewhat in giving this case its proper status if we contrast it with the familiar cases of our reports. The case is not the ordinary suit for alienation of affection and loss of society through an adulterous intercourse. Hattie Cushing, and she alone, would have been the respondent to such a charge. The husband's failure to give his wife the further benefit of his society was not from any lack of willingness on his part, but because he was prevented from living with her by his incarceration. Nor is the case one against relatives or friends who have sought from motives good or bad to separate husband and wife. The defendants have not tried to get the plaintiff's husband to abandon her, nor proceeded from any malicious feeling against her, nor in fact. caused her any pecuniary loss except that incident to the husband's punishment for crime.

If this had been the usual suit against the woman whose act is the basis of the plaintiff's claim, there could have been no recovery. A single instance of adultery, had by a man accustomed to marital infidelities with a common prostitute who serves his purpose on a chance occasion, does not constitute the enticement and alienation essential to a recovery. This action is not an alienation suit, but is like it in respect to the damage claimed. The suit seeks a recovery for the same loss of society and support that is sustained in an alienation case, but with the loss due to an imprisonment for the crime of adultery instead of to an alienation of affection. The immediate cause of the damage sued for was the imprisonment. The more remote cause was the action of the defendants.

It may be said generally that when one is injured by the wrongful act of another, and a third person suffers an indirect and consequential loss because of some contract obligation to the injured party, the loss suffered by such third person does not constitute a cause of action. *Conn. etc. Ins. Co.* v. *New York etc. R. R. Co.,* 25 Conn. 265, 65 Am. Dec. 571; *Rockingham etc. Ins. Co.* v. *Bosher,* 39 Me. 253, 63 Am. Dec. 618; *Ashley* v. *Dixon,*

48 N. Y. 430, 8 Am. Rep. 559; *Anthony* v. *Slaid,* 11 Met. 290. It has been held, however, that where one is injured by the wrongful act of another, and a third party is indirectly and consequentially injured, the injury of the latter is actionable, although not directly committed upon him, if it was maliciously and fraudulently intended to affect, and did injuriously affect, him in his contract or business relations.     *Gregory* v. *Brooks,* 35 Conn. 437, 95 Am. Dec. 278; *McNary* v. *Chamberlain,* 34 Conn. 384, 91 Am. Dec. 732.

The above cases deal with injuries indirectly affecting a third person through his contract obligations to the party immediately injured.    There are other cases where the consequential injury is suffered by reason of a natural relation to such injured party.    The father, being entitled to the services of his children during their minority, may recover for any injury wrongfully inflicted upon his child which causes a loss of service.    A husband has a right to recover for any injury wrongfully inflicted upon his wife, physical or otherwise, which deprives him of her services.    The wife has no corresponding general right.    But husband and wife each have the same right to recover for an alienation of the other's affection and the consequent loss of society and support.    The right of the wife seems not to have been extended beyond this otherwise than by special enactment.

The position of the wife will appear more fully from a reference to some cases where the loss of the husband's society and support was due to other causes than alienation of affection. In *Clark* v. *Hill,* 69 Mo. App. 541, the husband, a strong and healthy man, was made incurably insane by the defendant's repeated threats of violence; and the wife brought suit for the loss of her husband's support, comfort and society, and recovered. The ground stated was that under the statutes then existing a married woman could maintain an action in her own name for this loss.    It appears from a case cited in the opinion that the statute referred to specifically included in the rights of action which were a part of the property rights conferred, those growing out of any violation of her personal rights.   So the decision may be viewed as a construction of the Missouri statute.    No such clause is contained in our statute, and it is not necessary to inquire as to the effect of such a provision upon the common law rule.

Where the wife has been deprived of the support of her husband by reason of his injury through the negligent act of another, she is held to have no separate remedy. In *Feneff* v. *New York etc. R. R. Co.,* 203 Mass. 278, 89 N. E. 436, 133 Am. St. Rep. 291, 24 L. R. A. (N. S.) 1024, decided in 1909, it was said that no case had been referred to or found in which an action for a loss of consortium had been maintained because of a personal injury to the other spouse for which that spouse was entitled to recover full compensation; that persons whose relations to the injured party are purely domestic should not be permitted to share in, nor receive a sum in addition to, the compensation to which the injured person is entitled; that their damages are too remote to be made the subject of an action. It is said in Lush's Husband and Wife, ed. 1910, p. 13, that there is no reported case of an action by a wife, or by husband and wife, for consequential damage to the wife through the negligent act of a defendant causing personal injuries or other damage directly to the husband.

The only cases we know of where the loss of support resulted from the husband's imprisonment for crime were cases which arose under the Civil Damage Acts. Most of these statutes provide that the wife may recover for a loss of the means of support as well as for injuries to person and property. This provision regarding the means of support is held to apply to both the direct and indirect results of the intoxication; and in actions brought under the statutes containing it the wife is allowed to recover for the loss of support which she suffers because of her husband's imprisonment. *Beers* v. *Walhizer,* 43 Hun. 254; *Homire* v. *Halfman,* 156 Ind. 470, 60 N. E. 154. In other cases, where the statutory remedy is confined to injuries to person and property, a recovery for the loss of support resulting from the husband's imprisonment is denied. *Bradford* v. *Boley,* 167 Pa. St. 506, 31 Atl. 751; See *Dennison* v. *Von Wormer,* 107 Mich. 461, 65 N. W. 274.

It is evident that the plaintiff cannot recover the damages claimed in the absence of a statutory authorization, unless upon some special ground. It is true that the loss she suffered resulted from an intentional and malicious act. But the malicious purpose and act of the defendants were directed against the husband and not against the wife. Whatever Nieberg's right against the defendants might have been if their acts had deprived him of

his will, he certainly could not have recovered upon the case as presented. The reasoning in the Feneff case, based upon the husband's right of recovery, is not to be taken as implying that the wife may recover where the husband cannot. It is not the deprivation of the husband's support, but the cause of the deprivation, which determines the question of remedy. If the deprivation is due to an alienation of the husband's affection, the wife has a right of action corresponding to that of the husband. If the deprivation is due to causes for which the husband may recover, his recovery is deemed to be partly for the wife's benefit, and the remedy is clearly to the husband and not to the wife. If the conduct of the husband was such that he cannot recover, there can be no recovery by the wife, unless upon grounds directly personal to her. In such a case the damage would be considered immediate and not consequential. It is said in the work above cited that no action will lie at the suit of the wife for loss of consortium, or indeed for any other consequential damages which she may have suffered from an act of trespass to her husband, except possibly when the trespass is committed upon the husband with intent to injure the wife. As this case shows no intent to injure the wife, it is not necessary to pursue the argument further.

As the case stands, the situation is the same as in any case where the head of a dependent family is convicted of crime and sentenced to imprisonment. The rights of all persons entitled to the support of a relative are subject to the right of the State to exact the penalty for his breach of the law. The wife is in a class by herself, but she is not the only one entitled to support. The obligations of support are both natural and statutory. The family may consist of a wife, or a dependent child, or other relative entitled to support,—as a dependent parent or grandparent, brother or sister, or grandchild,—or of all these together. It would be difficult to place a recovery in this case upon grounds which would not be equally available to other relatives entitled to support.

Our conclusions upon the points considered are such that it is not necessary to characterize the nature of the defendants' acts more fully than was done in opening the discussion; nor to consider the proper application of the rule regarding the motive with which a lawful act is done; nor to inquire as to the

rights of private persons with reference to the detection and punishment of crime.

*Judgment reversed and judgment for defendants.*