# GREEN MOUNTAIN POWER CORPORATION

v.

# GENERAL ELECTRIC CORPORATION.

### Civ. A. No. 79–112.

United States District Court,
D. Vermont.

Aug. 14, 1980.

Fred I. Parker, Susan F. Humphrey, Langrock, Sperry, Parker & Stahl, Middlebury, Vt., for plaintiff.

Clarke A. Gravel, Robert B. Hemley, Gravel, Shea & Wright, Ltd., Burlington, Vt., Richard W. Renehan, Hill & Barlow, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

Competing pretrial motions compose the important question of whether the plaintiff Green Mountain Power Corporation (GMP) may seek to recover for economic loss caused by the alleged negligent performance of a contractual undertaking by the defendant General Electric Corporation (GE) with the Vermont Yankee Nuclear Power Corporation (Vermont Yankee) during the summer of 1978. The diversity of citizenship between the parties and the jurisdictional amount are clearly demonstrated in the complaint; hence the substantive law of Vermont must be applied to the facts developed in the record. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*The Facts Alleged*

It appears from the record that on April 7, 1978, GE and Vermont Yankee entered a written contract for work to be performed by GE on the Vermont Yankee Nuclear generating facility at Vernon, Vermont. The contract provided that GE would make certain modifications to the suppression chamber (the "torus") of the generating unit. GE undertook this work in 1978. According to the complaint, during the course of the work, GE negligently damaged the torus, causing the plant to shut down operations. The plant supplied no power to its customers from this source during the period of July 1 to August 14, 1978, as a result of the shutdown.

During the time period under consideration GMP owned twenty percent of the stock in Vermont Yankee. GMP was entitled to purchase twenty percent of the power produced at the Vermont Yankee facility. In 1978 GMP was represented on the

board of directors of Vermont Yankee. As a result of the shutdown caused by GE, GMP was unable to purchase any power from the Vernon facility during the whole period of the shutdown. GMP was required to purchase more expensive power to supply the deficiency in its requirements as a consequence of the suspended operation of the Vernon plant.

GMP filed this action on May 29, 1979, asking for damages arising from GE's negligence in performing the work on the torus. GMP alleges no physical damages to its own property. The only damage complained of is the excess cost of the purchase of alternate replacement power.

By its answer of August 2, 1979, GE challenges the plaintiff's right to any recovery by asserting as its first affirmative defense the plaintiff's failure to state a claim upon which relief can be granted.

*Plaintiff's Motion To Strike*

■ Plaintiff promptly moved, pursuant to Rule 12(f), Fed.R.Civ.P., to strike defendant's first affirmative defense. The defense raises an important and unsettled question of Vermont law as to the sufficiency of the complaint. Courts are reluctant to determine disputed and substantial questions of law on a motion to strike, unless there is a showing of prejudicial harm to the plaintiff. *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962). Where the defense presents a purely legal question, a motion to strike is generally regarded as an inappropriate vehicle to resolve substantial questions of law until after discovery and a hearing on the merits. *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975) (opinion by Justice Clark, sitting by designation); *see* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1381, at 800–01 (1969).

■ To sustain the plaintiff's motion to strike, the court must be convinced that there are no disputed questions of fact, that the questions of law are clear and settled, and that under no circumstances could the defense prevail. *Smith, Kline & French Laboratories v. A. H. Robins Co.*, 61 F.R.D. 24, 33 (E.D.Pa.1973). The question of law

presented here is unsettled and its application to the facts alleged has thus far been unresolved in Vermont. Furthermore, legal insufficiencies in the cause of action may develop at trial. Even if the motion to strike were to be granted at this stage, the defendant may raise the same motion for failure to state a claim at the trial, on the merits. Rule 12(h)(2), Fed.R.Civ.P. Moreover, much the same legal points are presented by the defendant's counter motions to dismiss and for summary judgment. The plaintiff's motion to strike will be denied.

*Defendant's Motion For Summary Judgment*

Defendant has moved, pursuant to Rule 56(b), Fed.R.Civ.P., for summary judgment. The motion properly falls under Rule 56 since the defendant has presented supporting affidavits outside the pleadings.

The defendant contends that the plaintiff's complaint does not state a cause of action under Vermont law. The defendant's argument is advanced on two grounds: first, Vermont law denies recovery for economic loss resulting from negligent interference with the plaintiff's contract rights with Vermont Yankee; second, an exculpatory clause in the repair contract between GE and Vermont Yankee (§ 45(b)) should apply to GMP.

The defendant contends that the plaintiff's recovery for its economic losses resulting from alleged negligence is precluded by the prevailing law of Vermont as stated in *Baldwin v. State*, 125 Vt. 317, 215 A.2d 492 (1965) and *Nieberg v. Cohen*, 88 Vt. 281, 92 A. 214 (1913). Both cases concerned efforts by married women to recover for wrongful interference with the plaintiff's marital relationship by wrongful acts of the defendants. *Baldwin* was for harm caused by negligent personal injury to the husband; *Nieberg* for the wife's loss of support and affection caused by the wrongful acts of the defendant in procuring her husband's conviction of a criminal offense. Recovery by the spouses for loss of their husband's consortium was denied in both actions.

After the present motions were argued and submitted, the *Baldwin* case was overruled by the Vermont Supreme Court. *See Whitney v. Fisher*, 417 A.2d 934 (Vt.Sup.Ct. 1980).[1] In *Nieberg* the Vermont court held that a wife may not recover for wrongful acts inflicted upon her husband unless the offending action was maliciously and intentionally done to harm the wife. *Nieberg v. Cohen, supra*, 88 Vt. at 289, 92 A. 214.

■ The doctrine upon which the defendant places reliance relates back to *Winterbottom v. Wright*, 10 M. & W. 109, 152 Eng.Rep. 402, 403 (1842) wherein the Court of Exchequer held that the breach of a contract to maintain a mail coach in repair conferred no right of action in a passenger in the vehicle who suffered harm in the vehicle's collapse. It was predicted that "outrageous consequences" would follow unless the operation of the contract was restricted to the parties to the agreement. The demands of privity have been constantly eroded, if not entirely abandoned. According to the law of Vermont, if there is a violation of duty to avoid harm, whether the obligation springs from the contract or concepts of tort, is not controlling. Once causation is established, want of privity will not relieve the legal obligation. *O'Brien v. Comstock Foods*, 125 Vt. 158, 162, 212 A.2d 69 (1965); *MacPherson v. Buick Motor*, 217 N.Y. 382, 111 N.E. 1050 (1916).

The present action lies in the area Professor Street designated as the confluence of contract and tort.

As was held in the leading case of *Hadley v. Baxendale* (9 Exch. 341 1854), the recovery in case of the breach of a contract is limited to such damages as may reasonably be supposed to have been in the contemplation of both parties at the time they made their contract, as the probable result of the breach of it. What can a reasonable man really foresee? that is the extent of liability in contract.

In the field of delict, liability is much more far-reaching. Here the rule is that the wrongdoer is liable for all the consequences which naturally follow from his wrongful act, provided only they be not too remote.

1 T. Street, *Foundations of Legal Liability* 88 (1906), *citing Stevens v. Dudley*, 56 Vt. 158, 166 (1883).

(B)reach of contract, wilful or not, is the breach of duties which the parties have fixed for themselves. . . . The duties broken by the commission of civil wrongs are fixed by law, and independent of the will of the parties.

F. Pollock, *The Law of Torts* 2 (13 Ed. 1929).

The defendant obviously predicted the danger of economic loss that would accrue to Vermont Yankee as a result of power outages during the performance of the repair contract. To guard against consequence, § 45(b) was included as a condition in GE's undertaking with Vermont Yankee:

In no event, whether on contract, warranty or tort (including negligence) or otherwise, shall contractor or its suppliers be liable for special, incidental, exemplary or consequential damages including, but not limited to, loss of profits or revenue, loss of use of the equipment or any associated equipment, cost of capital, cost of pur-

---

1. The court's decision in *Baldwin v. State* was based on the failure of the wife's complaint to state a cause of action in negligence. The court explained:

Mrs. Baldwin's action must stand, if it will, on a breach of a duty owing to her alone. A right to a recovery [in] negligence does not accrue to a plaintiff derivatively. Nor is it available to a "vicarious beneficiary—to vindicate an interest invaded in the person of another."

125 Vt. at 319, 215 A.2d at 493 (*Citing Palsgraf v. Long Island Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) (Cardozo, J.)).

In *Whitney v. Fisher* the court did not deal with the principal rationale of *Baldwin*. *See* Barney, C. J., dissenting at 936. The majority held:

There is no state of facts which reasonably may be conceived to justify a general rule denying a woman an action for loss of consortium, while recognizing the right in a man. Our prior cases cited herein for such a rule are hereby overruled insofar as they are inconsistent with this opinion.

At 936.

chased power, cost of substitute equipment, facilities or services, down-time costs, or claims of customer or Owner for such damages . . . .

▮ This limitation expressed the will of the parties. But, of course, the plaintiff GMP was not a privy to this undertaking, nor to the limitation imposed. Although GE protected itself against the foreseeable consequences specified in its undertaking with Vermont Yankee, the contractual protection does not reach the plaintiff who was not a party to the limiting condition. The defendant's duty under the repair contract was owed only to the specific persons named in the contract. Pollock, *Law of Torts, supra* at 2 and 3.

▮ The defendant urges that the plaintiff is a third party beneficiary to the repair contract and, as such, is precluded from recovery by force of the provisions of § 45(b). On the record presented, GMP's posture as a third party beneficiary is doubtful. The limitation of liability is imposed on Vermont Yankee (the Owner); it does not bind Yankee's customers. And the extension which the defendant advances runs counter to the interest of Yankee's customers. Whether the plaintiff is properly designated as a third party beneficiary depends somewhat on the intention of the parties to the contract to benefit an outsider. 4A *Corbin on Contracts* § 776 (1951). The defendant's argument rests on a disputed issue of fact, inappropriate for decisions on the pending motions. *American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. 435, 449 (S.D.N.Y.1976) (Carter, J.).

That takes us to the main thrust of the defendant's contention that the defendant cannot be held liable in negligence.

The responsibility of a contracting party to a third person with whom he has made no contract has a long history, and has presented problems of greater difficulty than those surrounding the relations of the immediate parties to the contract.

W. Prosser, *The Law of Torts* 622 (4th Ed. 1971).

But by entering into a contract with Vermont Yankee, GE may have generated legal duties, founded in tort, to perform its undertaking in such a way that GMP will not be injured. Although the citadel of privity is no longer impregnable, particularly in the area of sales of dangerous products, the fear of burdening those sought to be charged with unknown and unforetold consequences has precluded liability to unknown parties for unpredictable losses. *Id.* at 622-623.

The concept was stated by Mr. Justice Holmes in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 308–309, 48 S.Ct. 134, 135, 72 L.Ed. 290 (1927):

> (W)hile intentionally to bring about a breach of contract may give rise to a cause of action, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far. (citations omitted).

The Vermont courts have often held that intentional interference with the contractual relation of others will impose liability. *See, e. g., Lyon v. Bennington College Corp.*, 137 Vt. 135, 400 A.2d 1010 (1979); *Giroux v. Lussier*, 127 Vt. 520, 253 A.2d 151 (1969); *Mitchell v. Aldrich*, 122 Vt. 19, 163 A.2d 833 (1960). The parties have referred us to no cases where the supreme court of Vermont has considered the question of unintentional or negligent interference with contractual rights of others. The court predicts that the state supreme court would resort to established precedents of liability in negligence.

▮ Foresight of harm is the very foundation of negligence. Foreseeable consequences may be the measure of the scope of the legal duty to exercise care and may determine whether a duty of care has been

violated. *Thompson v. Green Mountain Power Corp.*, 120 Vt. 478, 483, 485, 144 A.2d 786 (1958); *Woodcock's Admr. v. Hallock*, 98 Vt. 284, 290, 127 A. 380 (1925). Once negligence is established, it matters not that the precise harm that was visited on the victim was unpredictable. *Id., Perkins v. Vermont Hydro-Electric Corp.*, 106 Vt. 367, 381, 177 A. 631 (1934); *Stevens v. Dudley, supra*, 56 Vt. at 168. The questions of foresight of harm and foreseeable consequences compose disputed issues of fact that cannot be resolved by motions to dismiss or for summary judgment. The resolution of these issues, along with the question of causation, requires a fuller development of the circumstances surrounding the claims of negligence asserted in the complaint. *McDonald v. Woodruff*, 133 Vt. 362, 363, 340 A.2d 90 (1975).

Despite these factual issues, the defendant relies on the *Restatement (Second) of Torts* § 766C (1979) to preclude recovery as a matter of law:

> One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
> (a) causing a third person not to perform a contract with the other, or
>
> (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
>
> (c) interfering with the other's acquiring a contractual relation with a third person.

The authors go on to elucidate:

> Thus far there has been no general recognition of any liability for a negligent interference, whether it is interference with a third person's performance of his contract with the plaintiff (cf. § 766), with the plaintiff's performance of his own contract (cf. § 766A) or with the plaintiff's acquisition of prospective contractual relations. (Cf. § 766B). The explanation usually given by the courts,

when one is given at all, is that the harm is too "remote" for negligence liability and that the defendant's conduct is not the "proximate cause." In most of the cases in which recovery has been denied, the defendant has had no knowledge of the contract or prospective relation and no reason to foresee any harm to the plaintiff's interests; and the decision sometimes has been explained under the rule as to unforeseeable plaintiffs stated in § 281. It seems more likely, however, that it is the character of the contract or prospective interest itself that has led the courts to refuse to give it protection against negligent interference. They apparently have been influenced by the extremely variable nature of the relations, the fear of an undue burden upon the defendant's freedom of action, the probable disproportion between the large damages that might be recovered and the extent of the defendant's fault, and perhaps in some cases the difficulty of determining whether the interference has in fact resulted from the negligent conduct. Whatever the reason may be, there is as yet no general recognition of liability for negligent interference with an existing contract or with a prospective contractual relation, although a number of cases, scattered through the years, have held that liability should be imposed.

*Restatement (Second) of Torts* § 766C, Comment a.

Despite the absence of general recognition of liability for negligent interference, the court is not persuaded that liability should be precluded as a matter of law for reasons of policy. The present record is composed of many factors which might well bring the action within the exceptions referred to in the Comment, rather than within the application of the general rule.

Moreover, the complaint in this proceeding is not framed as one for negligent interference with the plaintiff's contract with Vermont Yankee; it is stated on basic concepts of negligence growing out of the de-

fendant's undertaking with Vermont Yankee.

In the context of the record, the court is mindful of the observation made by Judge Kaufman in *In Re Kinsman*, 388 F.2d 821, 823–824 (2d Cir. 1968).

> Several cases often cited as illustrations of the application of the "negligent interference with contract" doctrine have been convincingly explained in terms of other, more common tort principles. *See* 1 Harper and James, The Law of Torts, 505–10 (1956). Indeed, Professors Harper and James suggest that the application of the doctrine is wholly artificial in most circumstances. *Id.* at 501. We therefor prefer to leave the rock–strewn path of "negligent interference with contract" for more familiar tort terrain.

The more familiar tort terrain found in the law of Vermont indicates that the question of the defendant's liability to the plaintiff depends on resolution of disputed issues of fact bearing on foresight of harm, foreseeable consequences and causation. In considering the pending motions, the court is called upon to resolve all ambiguities and reasonable inferences in favor of the plaintiff against whom dismissal and summary judgment are sought. In this conspectus of the record there appear issues to be tried that cannot be determined at the present stage of the proceedings. *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). The defendant's motion to dismiss and for summary judgment are denied. It is so ORDERED.