CHITTENDEN, January, 1839.

WILLIAM HUMPHREY *v.* RICHARD DOUGLASS, jr.

If horses escape from the enclosure of the owner, through the insufficiency of a division fence, which it was the duty of said owner, in common with another, to maintain, such other person may lawfully turn them from his enclosure into the highway.

It is immaterial with what *motive* a man does a legal act.

THIS was an action of trespass on the case, in three counts, and was before the court at the January term, 1838, at which time a new trial was granted. 10 Vt. R. 71.

In the first count, the plaintiff alleged that he was, on the 1st day of May, 1836, possessed of two horses, which escaped from his enclosure and went into the enclosure of the defendant's father, and that the defendant, without notifying the plaintiff, wilfully and maliciously turned said horses into the highway; that said horses were never afterwards found and were wholly lost to the plaintiff.

The second count was substantially like the first, and the third was in trover. Plea—not guilty, and issue to the country.

Upon the trial in the county court, the plaintiff, to maintain the issue on his part, introduced evidence tending to prove, that on the 14th May, 1836, he turned the horses in question into a pasture of his, which was adjoining the meadow of Richard Douglass, sen. the father of the defendant, and with whom the defendant lived—and it was admitted the defendant was a minor. The plaintiff's evidence also tended to prove, that the fence between the pasture and meadow aforesaid was a line fence and undivided; the plaintiff and Douglass, sen. having been in the practice, for years, of repairing the fence together, and that, up to the time the horses were so turned in, there had been no repai of the fence that season; that the fence was down in several places; that, on Sunday morning, being the next morning after the horses were so turned into the pasture, the defendant found them in the meadow of his father adjoining the pasture aforesaid, and turned them into the road, and gave them a start off north, the plaintiff living south; and that the defendant said in the course of the day afterwards that the plaintiff would have a good hunt to find the horses, and he hoped and believed that he would not find them. The plaintiff also introduced evidence tending to prove that the horses in ques-

tion were strange horses, and had then recently been purchased by the plaintiff, one of which came from the north; and that these facts were known to the defendant; and that they went off north and were wholly lost to the plaintiff, and that no notice was given to the plaintiff of turning the horses into the road, but that he accidentally found out the fact at three o'clock of the afternoon of the same day, when he immediately sent in pursuit of them; that he expended a good deal of time and money in pursuit of them, without effect.

Upon this evidence the plaintiff contended that he was entitled to a verdict, upon the first count in the declaration, but the court decided that the action could not be sustained, and directed a verdict for the defendant. To which decision and direction the plaintiff excepted.

*W. P. Briggs*, for plaintiff.

The first count in the declaration charges upon the defendant the malicious design of causing the loss of the property in question to the plaintiff, and the questions, now involved in the case, are not within the principle heretofore settled by the court in this case.

1. If there was any evidence, introduced by the plaintiff at the trial, which tended to support the first count in his declaration, it was clearly his right to have such evidence weighed by the jury.

2. There was evidence introduced by the plaintiff, which not only tended to support his first count, but which might well have warranted a verdict in his favor to the full amount of the injury of which he complains, and the county court, therefore, erred in directing a verdict for the defendant.

3. The former decision was founded upon the principle that the plaintiff was guilty of the first wrongful act, by negligently suffering his horses to trespass upon the lands of the defendant's father. Whereas, the case now shows that Douglass, senior, and the plaintiff were in *pari delicto*, so that no advantage could be taken of the plaintiff by reason of the defective condition of the division fence, as the fault was alike on both sides. 2 Dane's Dig. 676.

*Maeck & Smalley* and *F. G. Hill*, for the defendant, relied upon the former decision in this case, and insisted that it was decisive of the questions now before the court.

CHITTENDEN,
*January,*
1839.

Humphrey,
*v.*
Douglass.

COLLAMER, J.—At the last term it was decided that the defendant, having found the horses in his meadow, lawfully turned them out; and the plaintiff could not recover, as the damage, if any, was owing to his own neglect, in not restraining his horses within his own enclosures. Let us now inquire whether the case was essentially changed by the proof on the last trial.

It was shown that the fence, through which the horses escaped into the meadow of the defendant's father, was a partition fence, which it was as much the duty of the plaintiff as the other party to repair. The horses, then, escaped by the plaintiff's fault, as it was not the exclusive duty of the other party to maintain the fence. Horses are not commonable beasts, and to them, in this state, the common law applies—that is, the owner must fence them *in,* others are not bound to fence them *out.* The plaintiff's testimony tended to prove that the defendant acted with improper motives. This can never alter the character of a lawful act. Whatever a man has a legal right to do, he may do with impunity, regardless of his motive.

It seems the defendant started the horses off north. It is difficult to see, as the court have decided that he had a right to turn off the horses, why he must not turn them off in some direction, and it certainly would not do to hold that the issue should be made to turn on the point, that if he does not turn them in that direction of compass, least likely to injure the owner, it renders the whole unlawful. There was nothing in the nature of this act which amounted to a conversion of the property, or came within this action. It was but a part of the testimony which tended to show the defendant's motive, and falls with that.

Judgment affirmed.