ALMON W. WOODCOCK'S ADMR. *v.* WILLIAM P. HALLOCK.

Special Term at Rutland, November, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 8, 1925.

*Exceptions to Instructions—Animals—Question of Negligence in Permitting Escape of Stallion Held for Jury—Effect of Defendant's Responsibility for One of Several Proximate*

*Causes of Injury— Contributory Negligence Held for Jury
—Law Regards Proximate Rather Than Remote Cause—
Prudent Man Rule Material in Establishing Negligence,
but Once Established Immaterial as to How Far It Im-
poses Liability—Liability for Natural and Probable Con-
sequences of Negligence—Presumptions That Animals
Will Act in Conformity to Natural Instincts—Right to
Drive Away Trespassing Animal—Character of Inter-
vening Cause Sufficient to Break Causal Relation be-
tween Negligence and Injury—Rule for Determining Wheth-
er Intervening Act Has Broken Such Casual Relation—
Proximate Cause Held for Jury—Nominal Damages Not
Recoverable under G. L. 3314—Necessity of Count ·Seek-
ing Recovery in Right of Decedent to Entitle Recovery for
Conscious Suffering—Presumption of Pecuniary Loss to
Widow or Minor in Death of Husband and Father—Dam-
ages for Death of Husband and Father Held for Jury—
Considerations in Determining Such Damages—Discretion
of Jury in Awarding Damages—Admission of Sketch of
Premises Where Accident Happened Made by Witness on
Cross-examination Held in Discretion of Court.*

1.  Exceptions to instructions of court must be specific or they will
    not be considered.

2.  In action of tort under G. L. 6698, penalizing one who "wilfully
    or negligently" permits a stallion over a year old to run at
    large, and making such person liable for damages done by
    such stallion when so permitted to be at large, whether de-
    fendant, although not to blame for the breaking of the spring
    in the snap of stallion's halter, had otherwise taken adequate
    precautions to prevent his escape, *held* for the jury.

3.  Where two or more proximate and efficient causes combine to
    produce an injury, recovery may be had if defendant is re-
    sponsible for any one of them, though he is not responsible
    for the others.

4.  Under the evidence, question of contributory negligence *held* for
    the jury.

5.  The law regards the proximate rather than the remote cause of
    an injury.

6.  On question of what is negligence, it is material to consider the
    consequences that a prudent man might reasonably have an-

ticipated, but, when negligence is once established, that consideration is wholly immaterial on the question of how far it imposes liability.

7. One shown to have been negligent is liable for all the injurious consequences that flow from his negligence until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice.

8. In tracing the natural sequence of the consequences of a negligent act, when applied to living forces like horses, regard is to be had to the fact that they will probably act in conformity to their natural instincts.

9. When a stallion was unlawfully at large through the negligence of its keeper, those upon whose premises the animal was trespassing had a right to drive him away, and owed its keeper, when the stallion was trying to get through the fence to the place where their horse was, the duty of exercising the care of a prudent man to prevent the stallion from damaging their property.

10. No intervening cause is efficient to break the causal relation between a defendant's negligence and the injury, unless it is independent of and not set in motion by the original wrongful act.

11. Whether an intervening act has broken the causal relation between defendant's negligence and the injury is determined by the character of the intervening act, and if such act is a natural and proper result of the original negligence, it will not necessarily prevent a recovery thereon.

12. In action under G. L. 6698 for death of plaintiff's decedent by injuries inflicted by a stallion that was at large question of proximate cause of death, *held* for the jury.

13. In actions brought solely for the recovery provided for in G. L. 3314, nominal damages cannot be recovered.

14. Where there is no count in complaint seeking recovery in the right of decedent, although there might have been, conscious suffering, although shown by transcript, cannot be made the basis for an assessment of damages.

15. When a widow or minor child is a beneficiary, there is a presumption of pecuniary loss in death of husband and father, and proof of such loss is unnecessary, unless they have in some way forfeited their claims.

16. In action under G. L. 6698 for death of plaintiff's decedent, from injuries inflicted by a stallion, damages sustained by widow and children *held* for the jury, being more a matter of judgment than computation.

17. The age, health, and habits of industry of the decedent; his skill, thrift, and capacity for business; his earnings, property, and probable duration of life; his habits, generosity, and disposition toward those for whose benefit suit is brought, are among the considerations to be taken account of in determining damages by reason of his death, and, these proved, it becomes a matter for the judgment and discretion of the jury.

18. In action for death of plaintiff's decedent from injuries inflicted by defendant's stallion while at large, whether sketch of the premises prepared by witness on cross-examination, at defendant's request, should be admitted, rested in the court's discretion, hence its exclusion when offered by defendant was not error.

ACTION OF TORT under G. L. 6698. Plea, general issue. Trial by jury at the June Term, 1924, Addison County, *Fish*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Jones & Jones* and *I. H. LaFleur*, for the defendant.

*J. B. Donoway* and *W. C. Bosworth* for the plaintiff.

POWERS, J. The defendant's stallion escaped from his stable and ran down the road to the Woodcock place, the next farm to the south. He was there discovered by Floyd Woodcock, trying to get through the fence into the pasture where the Woodcock horse was. Almon Woodcock, the father of Floyd, was then at work in the garden on the other side of the house. Floyd called to him to come and help drive the stallion back home. He responded to the call, stepping into the barn and getting a pitchfork as he came, and the two men turned the stallion and started him back up the road towards home. This done, Almon turned and went back towards the house. Floyd remained in the road watching the stallion, which ran up the road a way, and after trying there to get through the fence into the pasture, he whirled and ran wildly down the road again.

Floyd swung at him a halter he was carrying and tried to head him off, but he dashed past and overtaking Almon Woodcock, who was then in the driveway to the barn and outside the traveled part of the highway, ran against and over him, inflicting injuries from which he died.

This suit is a tort action brought under G. L. 6698, which penalizes one who "wilfully or negligently" permits a stallion over a year old to run at large, and makes such person liable for the damage done by such stallion when so running at large. There is no claim here that the defendant wilfully allowed this horse to go at large, so he is not liable unless the horse escaped through his negligence.

One thing that made it possible for the horse to escape was the breaking of the spring of the snap on the headstall of the halter by which he was hitched. When this broke, the horse slipped off the halter in some way, and, there being nothing to prevent, he backed out of the open stall in which he stood, and passed out into the highway through the open door of the stable. The defendant's evidence tended to show that this spring broke on account of a latent defect therein, and for the purposes of this discussion it will be taken that such is the fact.

[1] The only exceptions relied upon are (1) those relating to the refusal to direct a verdict, (2) those relating to the refusal to charge as requested, and (3) one relating to the exclusion of a plan drawn by Floyd Woodcock. Of these only the first and last are for consideration. All of those included in the second group (except as hereinafter stated) were, by a rule frequently announced, too general to be available. *McAllister* v. *Benjamin*, 96 Vt. 475, 121 Atl. 263.

The motion for a verdict was predicated upon the following grounds: That the proximate cause of the accident was a latent defect in the halter snap; that the decedent was guilty of contributory negligence; that the defendant's negligence, if any, was not the proximate cause of the accident; and that no pecuniary damage had been shown. The defendant also attempted to raise the question of latent defect by an exception to the court's refusal to charge as requested; this exception, however, is challenged on the ground that it was not properly saved, in that it was not noted by the court. But inasmuch as the same point was raised under the motion, we say nothing as to this claim.

[2]   The motion was properly overruled.   It may well be that the breaking of the spring could not be made the basis of a recovery here; but there were other features of the case made by the evidence which were for the consideration of the jury on the question of liability.   It is familiar law that there may be more than one proximate cause in a case of this character. *Spinney's Admx.* v. *Hooker,* 92 Vt. 146, 102 Atl. 53.   The fact that this eleven year old stallion, used as he was for breeding purposes, at the height of the breeding season when he would be expected to be unusually restive and unreliable, was kept in an open stall, with no rope behind him or other barrier to prevent his backing out in case anything happened to his halter, together with the fact that the outside door of the stable was left open, made a question for the jury whether the defendant had taken adequate precautions as defined by the law, against his escape, notwithstanding the fact that the defendant was not to blame for the breaking of the spring in the snap.   It was for the jury to say whether this was or was not all that a prudent man would do.

[3]   So the one fact that the defendant was not responsible for the failure of the snap to function is not determinative of the case; for where two or more proximate and efficient causes combine to produce an injury, a recovery may be had if the defendant is responsible for any one of them, though he is not responsible for the others.   This is the rule that was applied in *Blanchard* v. *Shade Roller Co.,* 84 Vt. 442, 79 Atl. 911, and *Spinney's Admx.* v. *Hooker, supra.*   And it is just this feature of the case in hand that distinguishes it from *Hadley* v. *Cross,* 34 Vt. 586, 80 A. D. 699, where the breaking of the snap was the *sole* proximate cause of the accident.

[4]   Nor assuming that the case comes within the rule laid down in *Kilpatrick* v. *Grand Trunk Ry. Co.,* 72 Vt. 263, 47 Atl. 827, 82 A. S. R. 939, was the question of contributory negligence for the court.   It is true that the decedent would have escaped injury if he had stayed where he was.   But the safety of property was involved.   The fence and the horse in the pasture were in danger.   It cannot be said as matter of law that it was negligent for a man, even of his age, to arm himself with a pitchfork and assist another in driving this horse back home.   Then, too, it must be remembered that the decedent was not injured while doing that; he had accomplished that, and had started on his

return to his occupation. It was at least a jury question whether he should have anticipated and in some way guarded against the very thing that happened—a swift return of the excited beast.

Some suggestion is made in the brief that Floyd Woodcock was guilty of contributory negligence. But this was not made a basis for the motion, so we take no time with the claim.

[5-7] That the law regards the proximate rather than the remote cause of an injury is axiomatic. In the practical application of this rule, however, delicate and difficult distinctions necessarily arise. This results from the ever-variant character of the circumstances attending accidental injuries. So it is that no ultimate test has been or ever can be formulated that will solve the question in every case. The determination of what is a proximate and what a remote cause is more a matter of analysis and synthesis than of definition. *Mayor* v. *Foltz,* 133 Md. 52, 104 Atl. 267. It is well established with us that on the question of what is negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated. But when negligence is once established, that consideration is wholly immaterial, on the question of how far it imposes liability. One shown to have been negligent is liable for all the injurious consequences that flow from his negligence until diverted by the intervention of some efficient cause that makes the injury its own, or until the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice. *Stevens* v. *Dudley,* 56 Vt. 158; *Gilson* v. *D. & H. Canal Co.,* 65 Vt. 213, 26 Atl. 70, 36 A. S. R. 802; *Isham* v. *Dow's Estate,* 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 A. S. R. 691; *Mobus* v. *Waitsfield,* 75 Vt. 122, 53 Atl. 775; *Ide* v. *Boston & Maine R. R.,* 83 Vt. 66, 74 Atl. 401.

[8-12] So when it was established to the satisfaction of the jury that this horse went at large through the defendant's negligence, the question arose, was the decedent's injury a natural sequence of that negligence? It was for the jury to answer that question, unless the acts of the Woodcocks, father and son, amounted to an intervening cause within the meaning of the law. Had this horse injured someone on his way down to the Woodcock farm, no question could be made as to the defendant's negligence being a proximate cause. The case would then be in principle like *Barnes* v. *Chapin,* 4 Allen 444, 81 A. D. 710.

Nor could there be any doubt on the question of proximate cause, if the horse had succeeded in getting into the pasture and had injured the Woodcock horse.    The case would then be like *Lea* v. *Riley,* 34 L. J. (N. S.) C. P. 212.    For in tracing the natural sequence of the consequences of a negligent act when applied to living forces like horses, regard is to be had to the fact that they will probably act in conformity to their natural instincts. *Stevens* v. *Dudley,* 56 Vt. 158.    And the defendant's negligence accompanied the horse as he went racing down the road after his escape.    *Wilder* v. *Stanley,* 65 Vt. 145, 26 Atl. 189, 20 L. R. A. 479.    It is not difficult to understand what a stock horse at that particular time of the year would naturally do when he found himself loose in the highway.    Following the instincts of his nature, he would do just what this one did—seek others of his kind, and unless prevented in some way, he would join them when found.    So the Woodcocks were amply justified in believing that their property was in danger, and in adopting reasonable means to avert that danger by driving off the menacing intruder.    This was not only a perfectly natural and proper thing for them to do, but it was their legal right.    Assuming the defendant's negligence, the horse was unlawfully at large, and was a trespasser at the Woodcock place; and they had a right to drive him away.    *Humphrey* v. *Douglass,* 10 Vt. 71, 33 A. D. 177; same case, 11 Vt. 22, 34 A. D. 668; *Davis* v. *Campbell,* 23 Vt. 236; *Clark* v. *Adams,* 18 Vt. 425, 46 A. D. 161; *Ladue* v. *Branch,* 42 Vt. 574.    Indeed, it was a duty they owed to the defendant, when they discovered the stallion at the fence, to exercise the care of a prudent man to prevent him from doing damage to their property.    *Ide* v. *Boston & Maine R. R.,* 83 Vt. 66, 74 Atl. 401.    Their acts did not necessarily break the causal relation between the defendant's negligence and the injury, for no intervening cause is efficient to that end unless it is independent of and not set in motion by the original wrongful act.    *Shanley* v. *Hurley,* 96 Vt. 119, 117 Atl. 250, 23 A. L. R. 261; *Mobus* v. *Waitsfield,* 75 Vt. 122, 53 Atl. 775.    The mere fact that there has intervened a voluntary act of a responsible agent does not necessarily make the final consequence of the negligence too remote to support an action.    The test is to be found in the character of the intervening act.    If it is, itself, a natural and proper result of the original negligence, it will not necessarily prevent a recovery thereon.    The acts of the

Woodcocks were of this character, and the question of proximate cause was for the jury.

[13]    The last ground of the motion was also unavailing. It is true that in actions brought solely for the recovery provided for in G. L. 3314, nominal damages cannot be recovered. It was so held in *Lazelle* v. *Newfane,* 70 Vt. 440, 41 Atl. 511.

[14, 15]    Conscious suffering is shown by the transcript, but there being no count in the complaint seeking a recovery in the right of the decedent (though there might have been, *Ranney* v. *St. J. & L. C. R. Co.,* 64 Vt. 277, 24 Atl. 1053), it cannot be made the basis of an assessment of damages. The beneficiaries here are a widow and two adult sons. To support the ruling, we must find evidence of substantial and pecuniary damages to these. The word "pecuniary" as here used does not imply that loss of money, alone, will satisfy the statute; services rendered and other benefits conferred that have a money value are within the legal sense of the term. As just stated, we have here a widow as a party in interest. She was, by law, entitled to be supported by the decedent. This fact gives rise to an implication of pecuniary damage to her from the loss of her husband. When a widow or a minor child is a beneficiary, there is a presumption of pecuniary loss, and proof of that fact is unnecessary, unless they have in some way forfeited their claims. *Delaware, L. & W. R. R. Co.* v. *Jones,* 128 Pa. 308, 18 Atl. 330; *Chicago & E. I. R. R. Co.* v. *Huston,* 196 Ill. 480, 63 N. E. 1028; *Bradley* v. *Sattler,* 156 Ill. 603, 41 N. E. 171; *Standard Oil Co.* v. *Parkinson,* 152 Fed. 681, 82 C. C. A. 29; *Duzan* v. *Myers,* 30 Ind. App. 227, 65 N. E. 1046, 96 A. S. R. 341; *Sceba* v. *Manistee,* 189 Mich. 308, 155 N. W. 414, L. R. A. 1918C, 1090; *McCoullough* v. *Chicago, etc., R. R. Co.,* 160 Iowa, 524, 142 N. W. 67, 47 L. R. A. (N. S.) 23; 6 Thomp. Neg. § 7140; 17 C. J. 1352.

[16, 17]    Besides, damages in these cases are peculiarly for the jury. In the very nature of things, they are much more a matter of judgment than computation. No two lives are of the same value to their families and kinsmen, and in each case the damages are to be assessed according to the circumstances disclosed. The age, health, and habits of industry of the decedent; his skill, thrift, and capacity for business; his earnings, property, and probable duration of life; his habits, generosity, and disposition toward those for whose benefit suit is brought, are

among the considerations to be taken account of. These proved, it becomes a matter for the judgment and discretion of the jury. *Pittsburgh, etc., R. R. Co.* v. *Burton,* 139 Ind. 357, 37 N. E. 150, 38 N. E. 594; 3 Elliott, Evidence, § 1995.

[18]   During the cross-examination of Floyd Woodcock, at the defendant's request, he made a sketch of the premises where this accident happened, and when this was offered in evidence by the defendant it was excluded. The plaintiff says that the defendant did not save an exception to this ruling; but if he did, it is unavailing. The matter was within the court's discretion and no error appears. *Hassam* v. *Safford Lumber Co.,* 82 Vt. 444, 74 Atl. 197; *Goulette's Admr.* v. *Grand Trunk Ry. Co.,* 93 Vt. 266, 107 Atl. 118; *Leland* v. *Leonard,* 95 Vt. 36, 112 Atl. 198.

*Judgment affirmed.*