# Raymond W. Wright et al v. John Shedd et al

[ 177 A.2d 240 ]

November Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1962

*Reginald T. Abare* for the plaintiffs.

*John A. Swainbank* for the defendants.

**Holden, J.** An automobile owned by the plaintiffs was substantially damaged when the operator sought to avoid collision with the defendants' horse. The horse was wandering at large on a public highway at night. The trial court granted the defendants' motion for a directed verdict at the close of the plaintiffs' case. With this disposition of the issue of liability, the question of contributory negligence was never reached. The plaintiffs appeal.

The accident happened in Fairfax at about nine-thirty on the evening of December 2, 1960 as the plaintiffs were traveling south on state highway No. 104 in a 1957 Dodge station wagon that was operated by their son. The car had rounded a slight curve and was about to meet a car approaching them from the opposite direction. Just as the vehicles had passed, two horses appeared in the roadway ahead. One horse stood directly across the southbound lane of travel. The operator turned suddenly to the left to avoid collision. In swerving to the left, the vehicle had nearly cleared the obstacle but the right rear fender came in contact with the animal's shoulder and chest. The car was thrust further to the left, off the edge of the highway, and rolled over an embankment.

Directly after the accident the defendant John Shedd arrived at the scene. With the aid of the plaintiff and the occupants of another vehicle the defendant rounded up the horses and drove them across the road, into an adjacent pasture on the defendants' farm.

The gate was found open immediately after the accident. It consisted of an unframed section of wire fencing. At one extremity of this section, the truncated ends of the horizontal strands of wire were threaded through the eye of staples, driven into a fence post to accomplish the fastening of the gate. It was about two and one-half feet in height and the fence line no more than twelve feet from the edge of the highway.

Soon after the defendant had reached the site of the accident, the plaintiff Raymond Wright asked him if he owned the horses. The defendant replied he did not—that they belonged to a neighbor. Later Wright asked the defendant to help him locate the owner. The defendant answered that he did not know who owned them. As the two were about to start out to ascertain the owner, the defendant admitted

the horses belonged to him, stating he had falsely denied ownership in the first instance because he was "scared." Later, at a physician's office, where some of the passengers were taken for treatment, the defendant told those present that he felt badly about the accident, and realized that he would have to settle. Later on that evening, the defendant acknowledged liability and told the plaintiff to take the car to a certain shop in St. Johnsbury and have the vehicle repaired and that he would pay for it.

At the time of granting the defendants' motion the trial court explained that there was no evidence to show (1) how the horses came to be on the highway, (2) that the defendants knew or should have known of their presence there, (3) or that they were there in the road through any negligence on the part of the defendants. In reaching this result, the trial court was required to assume the truth of the facts that had been presented at this stage of the trial, for only the jury had the right to pass on the credibility and weight of the testimony. *F. I. Somers & Sons, Inc.* v. *LeClerc,* 110 Vt. 408, 411, 8 A.2d 663, 124 A.L.R. 1494. So too, if the evidence given is capable of conflicting inferences, a question develops which the jury must settle upon proper instructions. *O'Brien* v. *Dewey,* 120 Vt. 340, 346, 143 A.2d 130; *Perkins* v. *Vt. Hydro-Electric Corp.,* 106 Vt. 367, 399, 177 Atl. 631.

Our question is this: Are the facts which appeared unanswered at the conclusion of the plaintiffs' case sufficient to justify men of ordinary reason and fairness in affirming negligence?

We find no error in discharging the defendant Juanita Shedd from liability. Although she was joined as a principal defendant, there is nothing in the evidence to connect her with the ownership, management or control of the horses that were involved in the accident. As to her, the verdict was correctly entered.

The defendant John Shedd stands differently in this dispute. He finally admitted his ownership of the horses. Immediately upon his arrival at the scene he regained control of the animals and turned them through the gate that was found open into the fenced enclosure along the highway at the point where the accident took place.

These facts alone support a reasonable inference that this was the enclosure from which the horses made their way onto the highway. Of course it might be that the horses were stabled or pastured else-

where. If this was the true fact, it was a matter peculiarly within the defendant's knowledge and reach. Until such evidence was forthcoming to oppose the inference, it was entitled to stand against the defendant. *Sargent* v. *Gagne,* 121 Vt. 1, 9, 147 A.2d 892; *State* v. *Teitle,* 117 Vt. 190, 211, 90 A.2d 562; *Pacific Lumber Agency* v. *National Aircraft Corp.,* 108 Vt. 10, 17, 182 Atl. 192. At this stage of the trial it was clear that the defendant had the responsibility of ownership and control of the horse that precipitated the accident.

■ Long before the advent of motor vehicles, this Court recognized the danger from the presence of animals, unattended and unrestrained on a public highway at night and indicated that such circumstances might well be the source of liability. See *Holden* v. *Shattuck,* (1861) 34 Vt. 336, 343. Under modern traffic conditions the peril to persons lawfully traveling the public thoroughfares by motor vehicle is substantially aggravated and entirely obvious. In consequence, the owner or keeper of livestock capable of doing harm from this source of danger owes a duty of reasonable care to prevent them from wandering unrestrained on the public way. This is consistent with general considerations of tort liability. *Bender* v. *Welsh,* 344 Pa. 392, 25 A.2d 182; *Howland* v. *Cressy,* 95 N. H. 205, 60 A.2d 128; *Corey* v. *Smith,* 233 Ind. 452, 120 N.E.2d 410, 412; Restatement, Torts, §518 (1); 3 C.J.S. Animals, §§145, 149; 2 Am. Jur. §60 (cum. pocket supp.); and for a recent collection of cases, see 59 A.L.R.2d 1333.

■ The defendant urges that the ruling of the trial court is controlled; and must be affirmed on the strength of *Dailey* v. *Lawson,* 119 Vt. 82, 119 A.2d 684 and *Granger* v. *Tremblay,* 113 Vt. 32, 33, 28 A.2d 696. There is nothing in the scope of these decisions that opposes the general doctrine of tort liability to exculpate the keeper of domestic livestock, of the physical dimensions of a horse, in ignoring a potential danger from such animals. There is nothing to free him from the duty of reasonable care in reference to that danger. The concern of these appeals was the sufficiency of all the evidence, with particular reference to the issue of causation. In dealing with this question the correctness of the ruling depends entirely on the nature of the evidence offered in the case under consideration. As Professor Wigmore points out, it is seldom possible that a prior ruling can serve as a binding precedent. 9 Wigmore, Evidence §2494, p. 296 (Rev. Ed.). Each case presents a different combination of facts and circumstances

with varying inferences to be reached by minds of ordinary reason and fairness. If no reasonable inference of fault or causation is attained the issue of liability should be withheld.

■ The evidence here is of stronger substance than that appearing in the earlier cases. It supports the inference that the fence was inadequately constructed so that pressure from the weight of the animal against the gate would cause the latch to become unfastened. There was testimony to this effect that was received without objection. Furthermore the gate was found open at the time of the accident. These elements of the proof were sufficient to permit the conclusion that the enclosure was insecure and that the deficiencies indicated permitted the escape. A question for the jury was made as to whether the defendant had taken adequate precautions against the escape. *Woodcock's Admr.* v. *Hallock,* 98 Vt. 284, 289, 127 Atl. 380.

■ Negligence may lie in the creation of a dangerous situation, although the final harm is activated by some later event that might be expected to occur. *Johnson* v. *Cone,* 112 Vt. 459, 462, 28 A.2d 384.; *Wagner* v. *Village of Waterbury,* 109 Vt. 368, 378, 196 Atl. 745; Restatement, Torts, §302. If such a danger is a reasonable expectancy, then knowledge of its presence may be implied. *Humphrey* v. *Twin State Gas & Electric Co.,* 100 Vt. 414, 422, 139 Atl. 440, 56 A.L.R. 1011; *Randall* v. *Clifford,* 119 Vt. 216, 226, 122 A.2d 833; *Heaven* v. *Pender,* 11 Q.B. 503. So it was here. If the defendant carelessly confined the horses, reasonable triers could charge him with knowledge that they would escape onto the highway and obstruct its traffic, although actual knowledge of the fact had not been communicated to him.

To avoid the impact of the evidence that confronted him, it was incumbent on the defendant to produce evidence to overcome the case presented. This does not mean that he was called upon to explain how the accident happened nor how the horse escaped. Rather it was his burden to persuade the jury that in the face of the danger that prevailed, he exercised the care and caution that might be expected of reasonable prudence. *Woodcock's Admr.* v. *Hallock, supra,* 98 Vt. at 289.

Other aspects of the plaintiffs' case required explanation or rebuttal from the defendant. Immediately after the accident, the defendant sought to conceal his ownership of the horses. Later he re-

tracted and acknowledged his ownership and confirmed his liability for the damage that resulted.

■ These admissions, expressed and implied, were excused by the trial court as merely statements of a man uninstructed and unfamiliar with the law. This assumption was not warranted from anything that appears in the evidence. The defendant remained silent. And even though he might be unaware of his legal rights and duties, such ignorance would not justify a false concealment or fabrication of the true facts. Such conduct on his part gives rise to an inference of culpability, which operated strongly against him on all points at issue. *Green* v. *Woodbury,* 48 Vt. 5, 6; 2 Wigmore, Evidence, §278, p. 120 (Rev. Ed.).

■ Ordinarily the effect of admissions of a party on the issues involved is for the jury. If allowed to stand undisputed and unexplained, an admission may become of controlling importance. *Smith* v. *Vt. Marble Co.,* 99 Vt. 384, 399, 133 Atl. 355. Here they were coupled with persuasive facts from which negligent conduct could be inferred.

In directing a verdict at the close of the plaintiffs' case the trial court closed the door to rebuttal. In effect, it ruled that the facts presented, though unanswered, were insufficient to establish liability. This was error.

*Judgment reversed as to the defendant John Shedd, and cause remanded. Judgment affirmed as to defendant Juanita Shedd.*