Skoglund, J.
¶ 1. Plaintiff was injured when he struck a horse while driving on Vermont Route 7A. The horse belonged to Susan Wielt, who leased a house and land from Brian Toomey. Plaintiff sued Wielt and Toomey for negligence. Toomey moved for summary judgment, arguing he had no duty to keep the horse enclosed or to prevent its escape. The trial court granted summary judgment, and plaintiff appeals. We hold that Toomey owed no duty to plaintiff and affirm.
¶ 2. In 2008, Wielt leased a house and land from Toomey at 1900 Haiwood Hill, also known as Route 7A, in Bennington. Toomey gave Wielt permission to keep two horses, an Arabian mare and a thoroughbred, on the property and to pasture them there. Toomey also owned a parcel adjacent to 1900 Haiwood Hill, identified as 1952 Haiwood Hill. Toomey allowed Wielt to pasture her two horses on the 1952 lot as well, on the condition that Wielt take responsibility for all care of the horses and maintain a fence to keep them enclosed. Wielt pastured her horses on both lots, alternating the lots for grazing purposes.
¶ 3. Wielt constructed and maintained a temporary electric fence to contain her horses, consisting of two strands of nylon wire attached to five-foot-high fiber glass posts that were driven six inches into the ground. Toomey passed by the horses and the fence on his way to the grocery store, but he never rode or used the horses, and never inspected or maintained the fence. Nor was he knowledgeable as to the design or construction of the fence. *399 Toomey had no knowledge of any instance when a horse escaped or if the fence was in disrepair prior to the night of the accident.
¶ 4. On the night of the accident, around 1:00 a.m., plaintiff was driving home from work along Vermont Route 7A and passed by the lot where the horses were being kept. He saw a large moose-like animal in the road; he swerved and hit his brakes but could not avoid colliding with the animal. The animal crushed the windshield and top of plaintiffs vehicle injuring plaintiff. Plaintiff later discovered that the animal was Wielt’s thoroughbred.
¶ 5. The trial court found that the record did not include sufficient evidence to establish how the horse escaped the fenced-in lot. The responding officers observed a gate was down and the wire sagged on parts of the fence. The fence was electrified, at least in part, through solar power; however, the record did not establish whether the fence was circulating electricity at the time of the collision.
¶ 6. Plaintiff sued both Wielt and Toomey for negligence. Toomey moved for summary judgment, arguing that he owed no duty of care to plaintiff to prevent the escape of Wielt’s horse. The trial court granted summary judgment to Toomey, concluding that a landowner does not have a duty to inspect or maintain fences erected by a tenant for the tenant’s horse, absent some showing of facts making it foreseeable that the horse might escape. Plaintiff appeals.
¶ 7. ‘We review summary judgment rulings de novo, using the same standard as the trial court.” Demag v. Better Power Equip., Inc., 2014 VT 78, ¶ 9, 197 Vt. 176, 102 A.3d 1101. “Summary judgment should be granted when, taking all the allegations made by the nonmoving party as true, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.” Rubin v. Town of Poultney, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.); V.R.C.P 56(a).
¶ 8. Our question on appeal is: What duty, if any, runs from Toomey, as noncustodial landowner, to plaintiff? Vermont common law imposes a general duty of ordinary care: to act as a reasonably prudent person would in similar circumstances. But “whether there is a cognizable legal duty that supports a [particular] tort action depends on a variety of public policy considerations and relevant factors.” Hamill v. Pawtucket Mut. Ins. Co., 2005 VT 133, ¶ 6, 179 Vt. 250, 892 A.2d 226. It is “a question of *400 fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, ... the public interest at stake,” and the foreseeability of the harm. Id. Implicit in these considerations is the “basic tort rule that duty is measured by undertaking.” Murphy v. Sentry Ins., 2014 VT 25, ¶ 42, 196 Vt. 92, 95 A.3d 985 (quotation omitted). The existence of a duty “is primarily a question of law.” O’Connell v. Killington, Ltd., 164 Vt. 73, 76, 665 A.2d 39, 42 (1995). Absent a duty of care, an action for negligence fails. Id.
¶ 9. Although this case presents an issue of first impression, our decision in Wright v. Shedd provides a solid foundation for our analysis here. 122 Vt. 475, 177 A.2d 240 (1962). In Wright, a horse owned by Shedd wandered onto a road and was struck by a vehicle driven by plaintiff, resulting in injuries to plaintiff. This Court affirmed the dismissal of one of the defendants, Shedd’s wife, noting there was no “evidence to connect her with the ownership, management or control of the horses that were involved in the accident.” Id. at 477, 177 A.2d at 242. And we affirmed negligence with respect to the other defendant, Shedd, because “it was clear that [he] had the responsibility of ownership and control of the horse that precipitated the accident.” Id. at 478, 177 A.2d at 242. It was uncertain in Wright who owned the land from where the horse escaped, but this Court’s inquiry regarding the dismissed defendant did not extend to whether she may have owned the pasturing land. Thus, while Wright did not go so far as to absolve all landowners of the duty to prevent harm from horses that escape from their property, it implied that such a duty will not attach absent some involvement in the ownership, management, or control of the horse. Ownership of the land was not enough.
¶ 10. This view is in line with centuries of Vermont statutory law. A 1797 statute read in relevant part, “[I]f the owner or keeper of any stone horse or stallion . . . shall wilfully or negligently suffer such stone horse or stallion to run at large, . . . such owner or keeper, shall forfeit and pay a sum.” 1797 V.S. ch. XXVII § 10. That law has remained largely unchanged, even though the Legislature has taken care to update language and make minor changes over the years, even as recently as 1997. The current version is codified at 20 V.S.A. § 3349(a) and states in relevant part: “An owner or keeper of a stallion, . . . who wilfully or negligently permits such stallion to run at large out of the *401 enclosure of such owner or keeper, shall be fined . . . and shall also be liable to a party injured for the damage done by such stallion while running at large.” Other Vermont provisions similarly demonstrate the Legislature’s intent that only the horse’s “owner or keeper” is liable in a civil action for damages suffered as a result of a horse’s escape. See, e.g., 20 V.S.A. § 3345 (“A person who knowingly permits his cattle, horses, sheep, goats, swine, or domestic fowls to go upon the lands or premises of another . . . shall be fined. . . . Such person shall also be liable for the damages suffered which may be recovered in a civil action.”); 24 V.S.A. § 3807 (“owner or keeper” of stray animal liable in tort for damage done to lands of others).
¶ 11. The courts of many other states limit the scope of duty in such cases to people or entities involved in the ownership or control of the injurious farm animal. In Blake v. Dunn Farms, Inc., 413 N.E.2d 560 (Ind. 1980), a car struck a horse that wandered onto a road at night. The driver sued the owner of the horse and the landowner. The court held, “If the landowner is neither the owner nor keeper, he has no duty to confine or restrain the animal.” Id. at 565; see also Jacobs v. Stover, 243 N.W.2d 642, 644 (Iowa 1976) (affirming summary judgment to landowner where parties admitted landowner had no duty to fence livestock); Sutton v. Duke, 176 S.E.2d 161, 169-70 (N.C. 1970) (denying landowner’s motion to dismiss because court lacked knowledge about landowner’s involvement with escaped animal); Clauson v. Kempffer, 477 N.W.2d 257, 261 (S.D. 1991) (affirming summary judgment in negligence action to noncustodial landowner where tenant owned horses that precipitated accident and controlled fencing).
¶ 12. Plaintiff relies on an opinion from New York’s highest court, Hastings v. Sauve, 989 N.E.2d 940, 942 (N.Y. 2013), which appears to directly contradict the above decisions. We find that authority unpersuasive. In that case, the plaintiff was injured when her van hit a cow on a public road. The three defendants were the two owners of the cow and the owner of the land where the cow was being kept. The Hastings court focused largely on a point of law irrelevant to this case — whether the vicious-propensity rule barred a negligence action — and only superficially discussed the issue of the defendants’ liability in negligence. The court summarily held that an animal’s owner or the landowner could be liable under “ordinary tort-law principles” when *402 the animal is negligently allowed to stray from the property on which it is kept. Id. at 942. But the court did not mention whether the landowner had any contractual responsibility to care for the cow or maintain the fence, and it provided no reasons for attributing possible liability to the landowner.
¶ 13. We find equally unpersuasive the New York Appellate Division case cited by plaintiff, which cites affirmatively to Hastings. In Sargent v. Mammoser, 986 N.Y.S.2d 728 (App. Div. 2014), a cow wandered from a farm onto a road, fatally injuring a motorcycle operator. Both the farm and cow were owned by the lone defendant. The court reversed the lower court’s dismissal of the motorcyclist’s complaint, which was based on common-law negligence. Id. at 730. In doing so, the court merely recited the facts and holding of Hastings, and then held that triable issues of fact with respect to the defendant’s negligence existed based on the defendant’s own testimony that there was a break in the fence on the night of the accident and that there had been previous breaks in the fence that had to be repaired. Id. Further, affidavits from the defendant’s neighbors averred that the escape of the cows was a recurring problem and the affidavit of the plaintiffs expert opined that the defendant’s fence was inadequate. The case is inapposite because it did not parse landowner and animal-owner liability; the defendant clearly was the only person in control of the land, the fence, and the cow.
¶ 14. Plaintiff also contends that an inadequately contained horse creates a dangerous condition on a property, and that we should apply duty principles from various condition-of-property cases. See, e.g., Demag, 2014 VT 78, ¶ 3 (negligence action based on injuries from falling in uncovered storm drain on landlord’s premises); Murray v. Nelson, 97 Vt. 101, 101, 122 A. 519, 520 (1923) (negligence action based on injuries from slipping on icy sidewalk caused by faulty water pipes in landlord’s building). We decline to use those principles because we can decide this case solely within control-of-animals precedents. Moreover, holding that pasturing horses creates a dangerous condition on property would disregard strong public policy supported by this state’s agricultural character. See Hamill, 2005 VT 133, ¶ 6 (noting that existence of duty depends in part on public interest at stake).
¶ 15. Plaintiff additionally argues that landowner owes a duty pursuant to Restatement (Second) of Torts § 379A (1965). *403 Under that provision, a landowner may be liable to persons outside of the land caused by activities of the tenant “if, but only if,” the landowner “knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.” Id. The comments to the section explain that it is “closely related to that stated in § 837 as to the liability of the lessor for a nuisance on the land.” Id. cmt. a. They note further that:
[I]f the unreasonable risk is not a necessary consequence of the contemplated activities of the lessee, and such activities could normally be conducted without creating the unreasonable danger to those outside of the land by taking precautions, the lessor is not liable unless he knows or has reason to know that the lessee intends to carry on the activity without taking precautions.
Id. cmt. c. The Restatement provides an illustration of these principles:
A leases land to B for use as a baseball park. At the time of the lease A knows that there is an unreasonable risk that in the ordinary course of a baseball game balls will be hit into the public highway in a manner dangerous to those using it. After B enters into possession, and in the course of a baseball game, a ball is hit into the highway, crashes into the windshield of an automobile, and injures C, the driver. A is subject to liability to C.
Id. cmt. c, illus. 1. We cannot similarly say there is an unreasm,able risk in the ordinary course of pasturing that horses contained by a fence will escape and pose a danger to passing motorists. When Toomey allowed Wielt to keep horses on his land on the condition that she maintain a fence to keep them contained, he could reasonably assume that an “unreasonable risk [was] not a necessary consequence,” and that “such activity] could normally be conducted without creating . . . unreasonable danger to those outside of the land.”[1]
*404 ¶ 16. Although it is difficult in Vermont to consider pasturing of horses as presenting an unavoidably unreasonable risk, at least one court has applied § 379A to find potential liability for a landowner in a negligence action involving a horse-motorist collision where the landowner knew the fence was in poor condition. See Gonzales v. Bierman, 773 P.2d 629, 630-31 (Colo. App. 1989). Other courts, however, have found application of the section questionable. See Byers v. Evans, 436 N.W.2d 654, 656-57 (Iowa Ct. App. 1988) (holding similar facts did not trigger landowner duty under § 379A, assuming it applied, where there was no “joint control” over animals, fences, or pens); Clauson, 477 N.W.2d at 260 (holding no landowner duty under § 379A, assuming it applied, where landowner exercised no control over fence design, but was merely aware fence existed).
¶ 17. Vermont is an agricultural state. Allowing a tenant to pasture a horse on the property does not, without some assumption of responsibility for control of the animal, create liability for permitting an “unreasonable risk.” See Martin v. Christman, 2014 VT 55, ¶ 13, 196 Vt. 536, 99 A.3d 1008 (contrasting ownership of “dangerous animals” with ownership of “common farm animals”); Zukatis v. Perry, 165 Vt. 298, 302, 682 A.2d 964, 967 (1996) (implying that it is not unreasonable for horses to be kept near adjoining property where children live); see also Clauson, 477 N.W.2d at 260 n.5 (“Leasing land for the purpose of grazing horses is simply not the type of activity for which a landlord will be held liable under Restatement § 379A, since grazing horses would be dangerous to others only if done negligently”). We are not persuaded, therefore, to find a duty pursuant to the Restatement in this case.
¶ 18. Finally, underlying all of plaintiffs arguments is his allegation that landowner should have foreseen the possibility of harm that occurred. It is undisputed that landowner had no actual knowledge of horses previously escaping from the leased property or of the fence being in disrepair, prior to the night of the *405 accident. Of course it is possible that Toomey nevertheless could have foreseen some possibility of horses escaping onto the adjacent road and posing a danger to motorists, but “[f]oreseeability of injury, in and of itself, does not give rise to a duty.” Hamill, 2005 VT 133, ¶ 6 (emphasis in original) (quotation omitted). As the trial court noted, requiring a landowner to regularly walk a tenant’s property and check the condition of the fence would distort the contractual relations between landlord and tenant beyond reasonable bounds. The undisputed facts show that Toomey expressly disavowed any responsibility for care of the horses or maintenance of the fence. It was Wielt, not Toomey, who undertook to keep and care for these horses. See Murphy, 2014 VT 25, ¶ 42 (noting “basic tort rule that duty is measured by undertaking” (quotation omitted)). Because Toomey had no connection to the ownership, management, or control of the injurious horse or of the fence containing it, we cannot impose a duty on him to prevent that horse from escaping and harming passing motorists. We therefore affirm the trial court’s grant of summary judgment to Toomey.

Affirmed.

 The dissent neglects to explain that in Misterek v. Wash. Mineral Prods., Inc., 531 P.2d 805 (Wash. 1975) (en banc), the court was addressing a situation where, not only did the corporate owner know that the fences were in need of repair for over four years, but also the area where the land was situated was in a stock restricted area. That fact informed much of the decision, as the violation of that *404 statute was considered negligence as a matter of law. Such was the case in Larson-Murphy v. Steiner, 2000 MT 334, 15 P.3d 1205, also relied upon by the dissent. The legal argument centered on whether the escaped bull had been pastured in an open range area or a herd district (the condition of the fence was not at issue as it was conceded that the bull was capable of jumping over the fence and thereby obtaining access to the highway).