Filed 01/31/22

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 210-11-19 Lecv

| Page vs. Green Mountain Snowmobile et al |
| --- |

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment (Motion: 4)
Filer:        Richard J. Windish
Filed Date:   July 01, 2021

The motion is DENIED.

Bernadette Page ("Plaintiff") suffered injuries as the result of a snowmobile accident at Smuggler's Notch Resort ("the Resort") on January 29, 2017, while she was participating in a group snowmobile tour that was operated by Green Mountain Snowmobile Adventures, LLC ("GMSA"). According to the complaint she filed against GMSA and the Resort (together, "Defendants"), Plaintiff "suffered serious injuries" when she lost control of the snowmobile Defendants provided her: she "struck a guardrail on a closed section of Route 108, catapulted off the snowmobile down a steep embankment and struck her head against a tree." Plaintiff stated in a deposition she gave in July 2020 that, as a result of the accident, she broke her right wrist in two places, dislocated her right elbow, and broke her left clavicle. Plaintiff asserts that the Defendants owed her a duty to "properly train, equip and prepare" her before the tour began and to "properly and directly supervise [her] while on the tour." Plaintiff further asserts that she suffered the injuries as a direct and proximate result of Defendants' negligence. Plaintiff seeks damages for permanent injury, past and future pain and suffering, past and future medical expenses, loss of the ability to enjoy life, and lost wages and/or earning capacity.

Defendants deny any liability to Plaintiff and have filed a joint motion for summary judgment. Defendants contend that Plaintiff's cause of action is barred by Vermont's inherent risk doctrine, codified at 12 V.S.A. § 1037, which provides:

> Notwithstanding the provisions of section 1036 of this title, a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary.

Section 1036, referenced in the inherent risk doctrine statute, describes Vermont's comparative negligence statute. See 12 V.S.A. § 1036 (providing that plaintiff's contributory negligence will not bar negligence claim unless plaintiff's negligence exceeds total causal negligence of defendant(s)).

Entry Regarding Motion
210-11-19 Lecv Page vs. Green Mountain Snowmobile et al

Page 1 of 6

## Summary Judgment Standards

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material "'if it might affect the outcome.'" *In re Estate of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (quoting *N. Sec. Ins. Co. v. Rossitto, 171 Vt. 580, 581, 762 A.2d 861, 863 (2000)* (mem.)). "'Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact.'" *Boulton v. CLD Consulting Eng'rs*, 175 Vt. 413, 417 (2003) (quoting *Ross v. Times Mirror, Inc., 164 Vt. 13, 18 (1995)*). "'The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case.'" *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 324 (1986)*). "If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law." *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318 (quoting *G.S. Blodgett, 163 Vt. at 180*). When considering motions for summary judgment, the nonmoving party is entitled to "all reasonable doubts and inferences." *West v. N. Branch Fire District #1*, 2021 VT 44, ¶ 13 (citing *In re Miller Subdivision Final Plan, 2008 VT 74, ¶ 8, 184 Vt. 188); G.S. Blodgett*, 163 Vt. at 180.

## Legal Analysis

Plaintiff asserts that Defendants' negligence caused her damages. "Common-law negligence has four elements: a legal duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a causal link between the breach and the injury." *Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71A, ¶ 26, 212 Vt. 612 (citing *Montague v. Hundred Acre Homestead, 2019 VT 16, ¶ 14, 209 Vt. 514*). Whether a defendant owes a duty to a plaintiff "'is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, the public interest at stake, and the foreseeability of the harm.'" *Id.* (quoting *Deveneau v. Wielt, 2016 VT 21, ¶ 8, 201 Vt. 396* (quotations and alteration omitted))."Underlying 'these considerations is the basic tort rule that duty is measured by undertaking.' *Id.*

Defendants asserted as an affirmative defense that they owed no duty to Plaintiff in this case due to Vermont's inherent risk doctrine, which, according to the District Court of Vermont, incorporated the common law doctrine of assumption of risk:

> This rule holds that when a risk or danger is obvious such that it is widely known by reasonable people under the particular circumstances and necessary such that it is impossible or unreasonably difficult or expensive to eliminate, the person engaged in the dangerous activity assumes those obvious and necessary risks. Concomitantly, there is no duty on the part of others to warn about or extinguish those risks.

*Dillworth v. Gambardella*, 776 F. Supp. 170, 172 (D. Vt. 1991).

The Vermont Supreme Court first addressed this statute in 1994, and it set forth the preamble of the Act, which states, in part:

> It is a purpose of this act to state the policy of this state which governs the liability of operators of ski areas with respect to skiing injury cases, including those resulting from both alpine and Nordic skiing, by affirming the principles of law set forth in *Wright v. Mt. Mansfield Lift, Inc.,* [96 F. Supp. 786 (D. Vt. 1951),] and *Leopold v. Okemo Mountain, Inc.,* [420 F. Supp. 781 (D. Vt. 1976),] which established that there are inherent dangers to be accepted by skiers as a matter of law.

*Estate of Frant v. Haystack Grp., Inc.,* 162 Vt. 11, 14 (1994) (quoting 1977, No. 119 (Adj. Sess.), § 1 (eff. Feb. 7, 1978)). The Court in *Estate of Frant* reviewed negligence cases that had been decided up to that point that involved a ski area's duty to skiers. See *id.* at 14–18. Defendants cite us to no case, nor has the court found any cases, in which the doctrine has been applied to accidents involving snowmobiles. According to the District Court of Vermont, "A basic principle of sports participation generally is that a person who takes part in a sport accepts the obvious and necessary dangers which inhere in it." *Dillworth,* 776 F. Supp. at 172. "As long as the risk . . . is found to be obvious and necessary then the statute will apply to shield the defendant by removing any duty owed to the plaintiff." *Id.* at 173

"Whether a risk is inherent, obvious and necessary to a sport is ordinarily an issue appropriate for a jury." *Umali v. Mount Snow Ltd.,* 247 F. Supp.2d 567, 575 (D. Vt. 2003) (citing *Dillworth v. Gambardella,* 970 F.2d 1113, 1120 (2d Cir. 1992)); see *LeClair v. LeClair,* 2017 VT 34, ¶ 13, 204 Vt. 422 (holding trial court erred in granting defendant's motion for summary judgment in negligence case because jury could have found condition of roof presented unreasonable risk to plaintiff and that defendant, therefore, owed plaintiff duty).

In arguing that the inherent risk doctrine absolves them of liability, Defendants rely on Plaintiff's acknowledgment during her deposition of the following risks: that she knew she was going to be in control of the snowmobile she was riding, that she might not be able to handle the snowmobile, that she might misunderstand or forget the instructions she had been given regarding the operation of the snowmobile, that the snowmobile could malfunction and cause her to crash, that the risk of losing control of the snowmobile was inherent to the sport of snowmobiling, and that falling from the snowmobile and colliding with manmade or natural obstacles was a risk.[1] In fact, Defendants point out, Plaintiff conceded during her deposition that by the time she fell off her snowmobile and sustained the injuries at issue, she had stopped the

---

[1] Defendants also rely on a Participant Agreement, Release and Assumption of Risk form GMSA required Plaintiff to sign before participating in the snowmobile tour in which she agreed to hold GMSA harmless for claims of negligence. The Vermont Supreme Court has refused to enforce this type of agreement on public policy grounds when the activity at issue is open to the general public. See *Dalury v. S–K–I, Ltd.,* 164 Vt. 329, 333–36 (1995); *Spencer v. Killington, Ltd.,* 167 Vt. 137, 142–43 (1997); see also *Umali,* 247 F. Supp.2d at 572–73; cf. *Provoncha v. Vermont Motocross Ass'n, Inc.,* 2009 VT 29, ¶ 20, 185 Vt. 473 (enforcing release where event at issue not open to general public). As a result, the release Plaintiff signed has no effect on the question whether Defendants are liable to Plaintiff for negligence.

snowmobile a couple of times, she was able to keep up with the group, and she had already made at least a couple of turns.

Although Plaintiff does not state this explicitly, Plaintiff's argument, essentially, is that Defendants acknowledged a duty to prepare and orient her to the snowmobile before the tour but that its preparation and orientation were insufficient and constituted negligence. Plaintiff testified during her deposition that, before the snowmobile tour, GMSA staff instructed her on how to start and stop the snowmobile, how to use the throttle, how to turn, and how to turn off the snowmobile. However, according to Plaintiff, this instruction was insufficient.

Dustin Turner was one of GMSA's tour guides on January 29, 2017, when Plaintiff had her accident. He testified during a deposition that, before a tour begins, "we explain to these people what they need to do, [and] how they need to do it. . . . [W]e are there to oversee them and to help them and instruct them, but ultimately they're the ones in control when they're riding the snowmobile." Mr. Turner further testified as follows:

Q: During the prep or the orientation, do you - - what steps do you take to assure beyond talking that the customer is going to be able to safely operate the sled?

A: When we - - when we would get them on the snowmobiles, when they would walk up and get on the snowmobiles, we would come down through, and we would start their snowmobiles for them. And while we're starting their snowmobiles for them, we're, okay, you've got the brake? Yup, it's right here. And you've got the throttle? Yup, it's right here. And just the very basics of that so that we know that they were at least paying attention during the prep so they know where the brake is, they know where the throttle is, because - - and they know where the emergency switch is. And those are the only things that really matter on that ride.

Mr. Turner testified that an orientation typically took between ten and twenty minutes, depending on the group.

Plaintiff contends that GMSA was negligent in the way it prepared her for its snowmobile tour. Defendants admitted the following statements by Plaintiff that she submitted in opposition to Defendants' motion for summary judgment:

24. Plaintiff was born after 7/1/83 and had never driven a snowmobile before 1/29/17.

25. Vermont law requires that someone born after 7/1/83 obtain a certificate of snowmobile education and makes an exception for a person under the direct supervision of a certified safety instructor.

26. Dustin Turner and Ralph (Skip) Irish attended the Vermont State Police's approved snowmobile tour guides training course on 12/16/15 in order to become certified safety instructors.

27. The Guide training course teaches snowmobile tour guides that the decision to authorize a customer to operate should be made through a combination of customer disclosure and supervised orientation. In addition to giving verbal instructions or presentations staff guides are taught to provide physical demonstrations and hands-on practice to customers. Guides are taught that effective instruction includes observing the customer performing the skills and tasks on their own.

28. The practice riding skills materials provided to guides at the training include the following recommendations:

You can improve your skills by practicing at a slow speed in a large, flat, snowcovered field with no obstructions. An experienced adult should be with you as you practice the following skills.

- Start and stop at various speeds, and try a few quick stops.
- Use hand signals as you turn in different directions.
- Try all four riding positions.
- Complete an oval and a figure eight. Also, make tight, low-speed turns.
- Slalom through traffic cones.

Plaintiff's accident occurred as she was trying to execute a turn. She claims that GMSA failed to require her to demonstrate, during the orientation, before the tour began, that she could effectively turn the snowmobile. She further describes GMSA's negligence as follows:

GMSA guides did not observe customers operate a snowmobile on a practice area after giving them instruction. GMSA did not include any observation of the customer's ability to demonstrate their understanding of the skills to operate a snowmobile safely before starting the "Evening Snowmobile Tour." Customers were not asked to demonstrate their ability to lean into a turn on a practice course. Instead, the lead guide observed the customers using his mirrors and turning around as the tour got underway on a wide and relatively flat ski trail.

In response to Defendants' Interrogatories, Plaintiff identified an expert she intends to call who is prepared to testify about industry standards for the safe operation of a snowmobile touring company renting snowmobiles regarding the orientation of its customers. Plaintiff contends that her expert will testify to the following, *inter alia*:

- GMSA failed to assess Plaintiff's experience sufficiently to assure that she understood how to operate a snowmobile.
- GMSA failed to dedicate the time necessary to ensure that Plaintiff understood how to operate a snowmobile.
- GMSA failed to require Plaintiff to operate a snowmobile on a practice course to allow its guides to observe Plaintiff demonstrate her ability to operate a snowmobile safely.

Defendants deposed Plaintiff's expert and rely on the expert's testimony that Plaintiff's accident occurred "because she overaccelerated and then lost control of the sled." However, the expert also testified that the accident occurred because of the "lack of training" by GMSA.

As described herein, the parties disagree about whether Defendants owed Plaintiff a duty of care. A jury must, therefore, decide whether the dangers that inhere in snowmobiling are "obvious" and "necessary" as those terms are used in 12 V.S.A. § 1037, such that the inherent risks are "impossible or unreasonably difficult or expensive to eliminate." *Dillworth*, 776 F. Supp. at 172; see *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1562 (2d Cir. 1992) (explaining that jury could find ski resort negligent and liable for skier's injuries despite inherent risk doctrine if facts so warrant). If the jury determines that Defendants owed Plaintiff a duty, they must then determine whether the training and orientation Defendants presented to Plaintiff on January 29, 2017, was sufficient to satisfy this duty. These questions present genuine issues of material fact that preclude granting Defendants' motion for summary judgment.

The motion is therefore denied. The clerk shall schedule a pretrial conference.

Electronically signed pursuant to V.R.E.F. 9(d) on January 31, 2022 at 8:58 AM.

Mary Miles Teachout

Mary Miles Teachout
Superior Court Judge